# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

## Commonwealth v. Shaleen, Appellant.

*Mines and mining—Registration of miner—Constitutional law—Constitution of the United States—Act of July 15, 1897, P. L. 287.*

The portion of the fifth section of the Act of July 15, 1897, P. L. 287, relating to the examination and registration of miners who have had "not less than two years' practical experience as a miner or mine laborer in the mines of this Commonwealth," violates the Constitution of the United States, inasmuch as it denies to a citizen of another state "the privileges and immunities of citizens in the several states," and "the equal protection of the laws." The unconstitutionality of this portion of the act, however, does not render the act unconstitutional as a whole.

Although the Act of July 15, 1897, P. L. 287, applies generally to anthracite mines, the act does not render ineligible to employment as miners all persons except those who had had two years' experience in anthracite mines.

Although no good reason may appear to the court why a limitation of the term used in the statute should have been omitted, and although it may seem highly improbable that an omission was intended, the court is not at liberty to enlarge the enactment to cover cases not within the clear and obvious meaning of the language; nor is the court warranted in assuming that the legislature did not attach value to experience in mines outside of the anthracite region, nor is there any presumption to that effect.

When the effect of a statute is to grant privileges to citizens of the state in which the law is enacted and to deny these privileges to citizens of other states who are similarly situated, the statute cannot be supported under the Constitution of the United States.

A part of a statute may be unconstitutional, and the remainder constitutional, and that which is constitutional will stand unless its provisions are so connected and dependent on each other in subject-matter that it

must be presumed the legislature would not have enacted one without the other. Where the parts are so separable that each can stand alone, and it was evidently the legislative intent that the part held to be valid should be enforced, although the other part should fall, the part so sustained should be declared operative.

Argued April 24, 1905. Appeal, No. 9, Jan. T., 1905, by defendant, from judgment of Q. S. Lackawanna Co., Oct. T., 1904, No. 1282, on verdict of guilty in case of Commonwealth v. John Shaleen. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Indictment for violating the Miners' Certificate Act of July 15, 1897, P. L. 287.

The jury found the following special verdict:

On September 10, 1904, and at various times before and after that date, the defendant, John Shaleen, was employed and accepted a position and occupation, and exercised the duties of and engaged himself as a miner in an anthracite coal mine in the county of Lackawanna without having previously obtained a legal or proper certificate of competency and qualification to entitle him to be employed as such miner from the miners' examining board, and without having duly registered as a miner, as such procurement of certificate and registry are required by the act of July 15, 1897. The said defendant had not had prior to the time of his acceptance of the employment as a miner as aforesaid two years' practical experience as a miner or mine laborer in the mines of this commonwealth, nor had he appeared in proper person before the board of examiners and answered intelligently and correctly at least twelve questions in the English language pertaining to the requirements of a practical miner, or been properly identified under oath as a mine laborer by at least one practical miner holding miners' certificates, as required by the act of assembly. The defendant, John Shaleen, was at the time he accepted the position of miner in the anthracite mine and performed the duties of such miner a citizen of the state of Illinois, in the mines of which state he had more than two years' practical experience as a miner and mine laborer.

There are in the state of Pennsylvania large numbers of anthracite mines, and large numbers of bituminous coal mines,

and there are also iron mines and zinc mines and fire clay mines. . There is no substantial or material difference in the method of mining coal in the bituminous mines of Pennsylvania and the bituminous mines of Ohio, West Virginia and Illinois or other states of the United States. Experience as a miner or mine laborer in the bituminous mines of Ohio, West Virginia or Illinois or other states of the United States would as fully qualify a person to exercise the duties of a miner in the anthracite mines as would similar experience as a miner or mine laborer in the bituminous mines of the state of Pennsylvania of some of them or in the iron mines, zinc mines or slate mines of Pennsylvania. If the facts stated and the acts of the defendant above set forth are sufficient in the opinion of the court to warrant a conviction of the defendant of the crime charged in the indictment, then the jury do say that the defendant is guilty in manner and form as he stands indicted. If not sufficient, then the jury find the defendant not guilty.

The court entered the following order :

Now, March 11, 1905, sentence of the court by Honorable John P. KELLY, A. L. J., is that you, John Shaleen, pay the costs of prosecution and $100 fine to the commonwealth of Pennsylvania, and stand committed until this sentence be complied with.

*Error assigned* was the judgment of the court.

*James H. Torrey*, with him *Joseph O'Brien*, for appellant. —The act under consideration is void both as to this particular defendant, and generally, because in contravention of article IV, section 2, clause 1, of the constitution of the United States, which is as follows : " The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several. states : " State v. Montgomery, 94 Me. 192 (47 Atl Repr. 165) ; Connor v. Elliott, 59 U. S. 591 ; Corfield v. Coryell, 4 Wash. C. C. 371 ; Ward v. Maryland, 79 U. S. 418 ; Slaughter-House Cases, 83 U. S. 36 ; Paul v. Virginia, 75 U. S. 168 ; Williams v. Miss., 170 U. S. 213 ; Collins v. New Hampshire, 171 U. S. 30 ; Smythe v. Fiske, 90 U. S. 374 ; Blake v. McClung, 172 U. S. 239 ; Watson's Case, 15 Fed. Repr. 511 ; State v. Mitchell, 97 Maine, 66 (53 Atl. Repr.

887) ; Reeman's Case, 41 Fed. Repr. 867 ; Henderson v. Mayor et al., 92 U. S. 259; Com. v. Shaffer, 128 Pa. 575; Com. v. Simons, 3 Pa. Dist. Rep. 792.

The act under consideration is void because in contravention of the 14th amendment of the constitution of the United States, sec. 1, as follows : " No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws : " Allgeyer v. Louisiana, 165 U. S. 578 ; State v. Goodwill, 33 W. Va. 179 (10 S. E. Repr. 285) ; Moredock v. Kirby, 118 Fed. Repr. 180 ; State v. Cadigan, 50 Atl. Repr. 1079 ; Busch v. Webb, 122 Fed. Repr. 655 ; Connolly v. Union Sewer Pipe Co., 184 U. S. 540 ; Braceville Coal Co. v. People, 147 Ill. 66 (35 N. E. Repr. 62) ; State v. Montgomery, 94 Me. 192 (47 Atl. Repr. 165.)

An act under consideration is void as an unreasonable and unjust exercise of the police power of the state : Connolly's Case, 184 U. S. 540; Ritchie v. People, 155 Ill. 98 (40 N. E. Repr. 454) ; Voight v. Wright, 141 U. S. 62; Brimmer v. Rebman, 138 U. S. 78.

The act of 1897 being void so far as relates to its discriminating features is wholly void : Pollock v. Trust Co., 158 U. S. 601 ; Spraigue v. Thompson, 118 U. S. 90 ; Baldwin v. Franks, 120 U. S. 678 ; California v. R. R. Co., 127 U. S. 1.

The construction of the act of 1897 adopted by the court below, is erroneous.

The court below based its judgment in favor of the commonwealth almost wholly upon the construction of the act of 1897, by which it supplies what it assumes to be an omitted word, to wit: the word " anthracite " before the word " mines " in the provision requiring that an applicant shall have had at least two years' practical experience as a miner or a mine laborer in the mines of this commonwealth. We contend:

1. That this construction would not be admissible even in the case of an instrument or statute subject to liberal construction.

2. That this construction is inadmissible in the interpretation of a statute which is in derogation of common right.

3. That this construction is particularly inadmissible with reference to a severely penal statute for the purpose of reaching a conclusion that the defendant is guilty of a misdemeanor punishable by fine and imprisonment: Marquette v. Berks County, 3 Pa. Superior Ct. 36 ; Com. v. Gouger, 21 Pa. Superior Ct. 217.

*John R. Jones,* with him *William R. Lewis,* district attorney, *George S. Horn* and *Robert J. Murray,* for appellee.—Surely legislation for the protection of the lives and limbs of the anthracite coal miners of Pennsylvania from the awful and deadly perils resulting from incompetent miners working in the anthracite coal mines of our state, and providing a system by which such protection is effected, and a penalty for its violation, is a just, wise, reasonable, salutary exercise of that inherent sovereign right—the police power of the state. Such legislation does not fall under the ban of the constitution—state or national: Boston Beer Co. v. Massachusetts, 97 U. S. 25 ; Dent v. State of West Virginia, 129 U. S. 114; Com. v. Bonnell, 8 Phila. 534; Com. v. Wilkes-Barre Coal Co., 29 Legal Int. 213; Com. v. Moore, 2 Pa. Superior Ct. 162; Morgan's Case, 47 L. R. A. 52; People v. Warden of the City Prison, 144 N. Y. 529 (39 N. E. Repr. 686); Com. v. Vrooman, 164 Pa. 306; State v. Gardner, 58 Ohio, 499 (51 N. E. Repr. 136); People v. Phippin, 70 Mich. 6 (37 N. W. Repr. 888).

It appearing that the legislature did not violate the fundamental principles of government, or overreach the limits of their constitutional authority in providing for the safety and protection of the anthracite miners, as expressed in the act of 1897, all questions, therefore, involving the wisdom, policy, justice, necessity and expediency of the law having been decided by the legislature in favor of the act are not subject to judicial review: Mugler v. Kansas, 123 U. S. 623; Powell v. Pennsylvania, 127 U. S. 678; Powell v. Commonwealth, 114 Pa. 265 ; Kidd v. Pearson, 128 U. S. 1; Lawton v. Steele, 152 U. S. 133; In Re Wilshire, 103 Fed. Repr. 620; Jew Ho v. Williamson, 103 Fed. Repr. 10 ; Iler v. Ross, 90 N. W. Repr. 869 ; California Reduction Co. v. Sanitary Reduction Works, 126 Fed. Repr. 29.

The established law of Pennsylvania is, that the legislature

may divide the coal mines of the state into two classes: (1) anthracite, and (2) bituminous, and legislate for each class separately. Such legislation is not local or special within the meaning and spirit of the constitution of our commonwealth: Durkin v. Kingston Coal Co., 171 Pa. 193; Com. v. Jones, 4 Pa. Superior Ct. 362.

The act of 1897 includes within its terms every anthracite mine and every anthracite miner within the state; it excludes none. It applies to all such miners equally and impartially; it does not discriminate in favor of some, at the expense of others of the same class; therefore it is general, not local or special, legislation, within the meaning and spirit of the constitution of Pennsylvania: Hoyt v. Sprague, 103 U. S. 613; New York & New England R. R. Co. v. Bristol, 151 U. S. 556; Minor v. Happersett, 88 U. S. 162; Hayes v. Missouri, 120 U. S. 68; Pace v. Alabama, 106 U. S. 583; Marchant v. Penna. R. R. Co., 153 U. S. 380; Com. v. Muir, 1 Pa. Superior Ct. 578; Com. v. Clark, 10 Pa. Superior Ct. 507; Com. v. Finn, 11 Pa. Superior Ct. 620; Read v. Clearfield County, 12 Pa. Superior Ct. 419; Com. v. Beatty, 15 Pa. Superior Ct. 5; Com. v. Gilligan, 195 Pa. 504; Sugar Notch Borough, 192 Pa. 349.

Nothing but a clear, plain, palpable violation of the constitution—an undoubted usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void: McCann v. Com., 198 Pa. 509; Erie, etc., R. R. Co. v. Casey, 26 Pa. 287; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Com. v. Maxwell, 27 Pa. 444; Sharpless v. The Mayor, 21 Pa. 147; Craig v. First Presby. Church, 88 Pa. 42; Hawthorn v. The People, 109 Ill. 302; Com. v. Butler, 99 Pa. 535.

"The miners' certificate law" does not contravene the constitution of the United States: The citizens of each state shall be entitled to all privileges and immunities of the citizens in the several states (art. IV, sec. 2): Corfield v. Coryell, 4 Wash. 371; Com. v. McCann, 14 Pa. Superior Ct. 221; Minneapolis, etc., Ry. Co. v. Beckwith, 129 U. S. 26; People v. Phippin, 70 Mich. 6; State v. Green, 112 Ind. 462 (14 N. E. Repr. 352); Dent v. State of West Virginia, 129 U. S. 114; Plumley v. Mass., 155 U. S. 461; Slaughter-House Cases, 83 U. S.

36 ; Patterson v. Kentucky, 97 U. S. 501 ; Butchers' Union, etc. v. Cresent City, etc., 111 U. S. 746 ; Barbier v. Connolly, 113 U. S. 27 ; Yick Wo v. Hopkins, 118 U. S. 356 ; Powell v. Pennsylvania, 127 U. S. 678 ; Allgeyer v. Louisiana, 165 U. S. 578.

OPINION BY HENDERSON, December 11, 1905 :

The defendant was indicted and convicted for having engaged in the occupation of a miner in an anthracite coal mine in the county of Lackawanna without having previously obtained a certificate of competency from the miners' examining board of the district and without having been duly registered as provided by the act of July 15, 1897. The validity of the statute under which the defendant was convicted is challenged upon the ground :

1. That it is in contravention of the first clause of section 2, article IV, of the constitution of the United States ;

2. That it is in contravention of the 14th amendment of the constitution of the United States ;

3. That it is an unreasonable and unequal exercise of the police power of the state.

The portion of the act alleged to be invalid is that part of the 5th section which provides that "all persons applying for a certificate of competency or to entitle them to be employed as miners must produce satisfactory evidence of having had not less than two years' practical experience as a miner or as a mine laborer in the mines of this commonwealth, and in no case shall an applicant be deemed competent unless he appear in person before the said board and answer intelligently and correctly at least twelve questions in the English language pertaining to the requirements of a practical miner and be properly identified under oath as a mine laborer by at least one practical miner holding miners' certificates." It is necessary at the threshold to determine the meaning of the phrase "in the mines of this commonwealth" in the clause of the statute above quoted. It appears from the verdict that at the time of the commission of the acts charged in the indictment, the defendant was a citizen of the state of Illinois ; that he had had more than two years' practical experience as a miner and mine laborer in the bituminous coal mines of that state ; that there is no substantial

or material difference in the method of mining coal in the bituminous mines of Pennsylvania and the bituminous mines of Ohio, West Virginia and Illinois or other states of the United States; that experience as a miner or mine laborer in the bituminous mines of Ohio, West Virginia, Illinois, or other states of the United States, would as fully qualify a person to exercise the duties of a miner in the anthracite mines as would similar experience in the bituminous mines of Pennsylvania. If then, the provision of the 5th section of the act under consideration requiring all persons applying for a certificate of competency to be employed as miners to produce satisfactory evidence of having had not less than two years' practical experience as miners or mine laborers in the mines of this commonwealth includes all the mines or all the coal mines therein, the legislation, as contended by the appellant, denies to him " the privileges and immunities of citizens in the several states " and " the equal protection of the laws." The statute is in derogation of common right and creates an artificial crime having no relation to guilty intent. In accordance with a familiar principle it must therefore be strictly construed having regard to the common understanding. The words of the statute do not demand that the two years' experience required should be in anthracite mines. No facts were found by the jury, nor does any presumption arise, indicating that, from the methods of mining in bituminous and anthracite mines, experience in the former would not be valuable to one undertaking work in the latter class of mines. Many of the risks incident to flooding, explosions, defective ventilation, falling of rock, and the operation of machinery would presumably exist in some degree in both the bituminous and anthracite regions, and experience in one would probably be useful to some extent in the other. It will be observed that competency is not based upon experience alone. The applicant must undergo an examination before the board of mine examiners and there exhibit the necessary qualifications. If the fact of experience in the mines for two years were the sole test of competency, it might be contended that the legislature intended to make experience in the anthracite mines an indispensable qualification, but the act provides the further safeguard that the miner shall satisfy the board of examiners that he is qualified to exercise his calling.

If experience for two years in the mines of Pennsylvania is made a preliminary qualification, although examination and the approval of the examining board are indispensable prerequisites of the right to work as a miner, are we warranted in concluding that the legislature intended to say the required experience must have been had in an anthracite mine? The only reason for such a contention is that the statute relates solely to the protection of miners in the anthracite coal mines of the commonwealth, and provides a mode for preventing the employment of incompetent persons as miners therein. It is argued that because it was the purpose of the act to guard the lives and limbs of anthracite miners, it must have been the legislative intent to provide that no one but those who had had experience for two years in the mining of anthracite coal should be eligible to apply for examination as expert miners. It is supposed that the provision of the 2d section of the act that the miners' examining board shall consist of nine miners and' the requirement of the 3d section that it shall be the duty of all persons employed as miners to be properly registered, without the qualifying word "anthracite" as applied to miners in either section, throws light on the sense in which the word "mines" is used in the 5th section, and indicates that the word anthracite is implied in each instance. The context in the 2d and 3d sections clearly shows, however, that anthracite miners only are referred to. The 2d section provides for the establishment of a miners' examining board in each district in the anthracite coal region to consist of nine miners "from among the most skillful miners actually engaged in said business in their respective districts." This directly refers to the anthracite coal region, to the districts of that region, and to the miners actually engaged "in said business" in their respective districts. The language of the section could not be made to apply to any other class of miners. The 3d section requires the registration of the name and address of every person qualified under the act to be employed "as a miner in an anthracite coal mine," and in immediate connection therewith it is made the duty of all persons employed as miners to be properly registered, and in case of removal from the district in which a miner is registered his duty is to be registered in the district to which he removes. The persons to be registered

are miners in anthracite coal mines.    Registration is to be made in one of the " districts in the anthracite coal region."    The use of the words " district " and " miner " in these sections is in such association with the word " anthracite " as to exclude any other understanding than that reference is had to anthracite miners and anthracite districts.    The words have direct and necessary relation to miners of anthracite districts.    The preparatory qualification of the miners who may apply for examination is a different subject, however, and has not, necessarily relation to anthracite mines.    None of the words in the immediate context limit the phrase " mines of this commonwealth " to anthracite mines, nor is any presumption apparent that the legislature intended to render ineligible to employment as miners all persons except those who had theretofore had two years' experience in anthracite mines.    It is conceded that the literal terms of the act do not limit experience to anthracite mines, but it is contended that a reasonable and beneficial interpretation calls for such limitation, and that manifest injustice would be done without such limitation.    It is true the object of a statute should be kept clearly in view in construing its terms, and that the meaning of the words used should be interpreted with reference to the fitness of the matter, but how are we to determine that the legislature evidently intended that a two years' experience in an anthracite mine should be a condition precedent to the privilege of appearing before the board of examiners for examination as a miner.    The fact that an examination is provided for and that it is within the power of the examining board to reject all incompetent applicants would rather indicate that experience in other mines was considered valuable as a qualification.

The language of the court in Pittsburg v. Kalchthaler, 114 Pa. 547, expressed in forcible terms the doctrine applicable here : " We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent or absence of intent which would prevent the application of the words actually used to a given subject.    Such a practice is really substituting the theories of a court which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the law-making

power.  It has been condemned by many text-writers and by many courts."  The legislative intention and the meaning of a statute penal in its character should be found in the language employed according to its fair and usual meaning, and not in the mischief to be remedied, and the supposed intention of the law-making body.

" The intention of a penal statute must be found in the language actually used, interpreted according to its fair and obvious meaning.  It is not permitted to courts in this class of cases to attribute inadvertence or oversight to the legislature when enumerating classes or persons who are subject to the penal enactment, nor to depart from the settled meaning of the words or phrases in order to bring persons not named or distinctly described within the supposed purpose of the statute : " U. S. v. Harris, 177 U. S. 305 (20 Sup. Ct. Repr. 609) ; U. S. v. Wiltberger, 18 U. S. 76.

Although no good reason may appear to the court why a limitation of the term used in the statute should have been omitted, and although it may seem highly improbable that an omission was intended, the court is not at liberty to enlarge the enactment to cover cases not within the clear and obvious meaning of the language.  We are not warranted in assuming that the legislature did not attach value to experience in mines outside of the anthracite region, nor is there any presumption to that effect.  We feel constrained to hold, therefore, that the required two years' practical experience as a miner or mine laborer in the mines of this commonwealth, prescribed in the section under consideration, is not limited to experience in the anthracite mines of the commonwealth.  It appears from the special verdict of the jury, as we have seen, that the methods of mining coal in the bituminous mines of Pennsylvania are substantially the same as in the bituminous mines of Ohio, West Virginia and other states, and that experience as a miner in those states would as fully qualify a person to exercise the duties of a miner in the anthracite mines as would similar experience in the bituminous mines of Pennsylvania.  The effect of the legislation is to discriminate against miners having experience in the bituminous mines of other states in favor of those engaged in the bituminous mines of Pennsylvania, and to make the latter eligible for examina-

tion to become miners in the anthracite region of Pennsylvania, while miners with similar experience in other states are excluded. A person who has had two years' experience as a miner or a mine laborer in the bituminous mines of Pennsylvania may become a miner in an anthracite mine. A person having similar experience in bituminous mines on the other side of the state line in West Virginia or Ohio may not apply for examination as an anthracite miner nor engage in mining anthracite coal. The restriction does not operate equally on all persons engaged in the same occupation under like circumstances.

Among the privileges and immunities of citizens of the United States the right to labor and engage in lawful trade or business is one of the most fundamental. The object of the federal constitution was in the respect referred to, as held in Paul v. Virginia, 75 U. S. 168 : " To place the citizens of each state upon the same footing with citizens of other states so far as the advantages resulting from citizenship in those states are concerned. It relieves them from the disabilities of alienage in other states ; it inhibits discriminating legislation by other states ; . . . . it insures to them in other states the same freedom possessed by the citizens of those states in the acquisition and enjoyment of property and in the pursuit of happiness, and it secures to them in other states the equal protection of their laws." Though the law be fair on its face, if it be so applied as to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is within the prohibition of the constitution : Williams v. Miss., 170 U. S. 213 (18 Sup. Ct. Repr. 583).

When the effect of a statute is to grant privileges to citizens of the state in which the law is enacted and to deny these privileges to citizens of other states who are similarly situated, the statute cannot be supported under the constitution of the United States.

While the enactment under consideration is not in favor of citizens of this commonwealth, its effect is substantially the same as if the discrimination had been specifically in their favor. The direct and necessary result of a statute must be taken into consideration when deciding as to its validity, even

if that result is not in so many words enacted or distinctly provided for: Collins v. New Hampshire, 171 U. S. 30 (18 Sup. Ct. Repr. 768). The power of the state is undoubted to legislate for the protection of the public health and the public safety, but if its enactment by its terms or necessary operation amounts to a denial of the equal protection of the laws to persons within its jurisdiction, it is unconstitutional. The guarantee of the equal protection of the law was said in Connolly v. Union Sewer Pipe Co., 184 U. S. 540 (22 Sup. Ct. Repr. 431), to mean that " no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and in like circumstances."

Our conclusion is that so much of the 5th section of the act under consideration as limits the eligibility of miners to an examination to those who have not had less than two years' practical experience as miners or mine laborers in the mines of this commonwealth is repugnant to the constitution of the United States. It follows as a corollary that another portion of the same section, which directs that the applicant for examination be properly identified under oath as a mine laborer by at least one practical miner holding mine certificates, must also be considered invalid, for this latter requirement has manifest reference to mine laborers who have had at least two years' experience in mines of this commonwealth. The idenification required could only be given as to Pennsylvania mine laborers, and this provision necessarily falls with the other with which it is connected.

We are not willing to decide, however, that the whole statute must be rejected because a portion of it is found to be unconstitutional. It is in effect an amendment of the Act of May 9, 1889, P. L. 142, and relates to a subject which has been recognized by numerous adjudications as a proper one for police regulation. The power of the legislature to classify coal mines and to legislate for each class separately is clearly established in Durkin v. Kingston Coal Co., 171 Pa. 193, and in Commonwealth v. Jones, 4 Pa Superior Ct. 362. The full consideration of the subject in the latter case renders unnecessary an extended discussion at this time. The doctrine there set forth is sustained in Holden v. Hardy, 169 U. S. 366 (18

Sup. Ct. Repr. 383). It is a familar rule that a part of a statute may be unconstitutional and the remainder constitutional, and that that which is constitutional will stand unless its provisions are so connected and dependent on each other in subject-matter that it must be presumed the legislature would not have enacted one without the other. Where the parts are so separable that each can stand alone, and it was evidently the legislative intent that the part held to be valid should be enforced, although the other part should fall, the part so sustained should be declared operative : Baldwin v. Franks, 120 U. S. 678 (7 Sup. Ct. Repr. 656) ; Poindexter v. Greenhow, 114 U. S. 270 (5 Sup. Ct. Repr. 903) ; Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601 (15 Sup. Ct. Repr. 912) ; Cooley's Const. Lim. (5th ed.) 212. The legislative purpose was to provide a method of securing experienced miners for the anthracite mines, and to this end a board of examiners was created before whom all persons desiring to be employed as miners were required to appear and show their ability for such service. A valuable safeguard against incompetency is thus created. A similar regulation was established by the act of May 9, 1889, and the legislature had that in view when passing the act of 1897. This provision for an examination placed in the hands of the examining board, appointed by the courts, ample power to ascertain and determine the qualification of the applicants, and to exclude those who, by a fair test, are found to be deficient in experience and skill ; and that was the main purpose of the statute. We hold, therefore, that the statute under consideration, with the exception of the portions which have been declared unconstitutional, is so separate from, and independent of, the eliminated parts in its scope and purpose that it may, and should be sustained as a valid enactment. Its first and sixth sections forbid any person to engage as a miner in any anthracite coal mine without having obtained a certificate of competency from the miners' examining board.

The defendant was charged in the first and fifth counts of the indictment with having engaged in the occupation of a miner in an anthracite coal mine without having previously obtained a certificate of competency and qualification provided for in the act of 1897 ; and in the third and fourth counts

with having omitted to comply with other requirements. It is not alleged that there was any compliance on his part with any of the requirements of the act, or that any attempt was made to comply with its constitutional provisions. The position is assumed that he may disregard these regulations intended to promote the safety of the persons engaged in anthracite mining, and his excuse for so doing is that the statute, which established the regulations, forbids him from applying for an examination or receiving a certificate because of his lack of experience in the mines of Pennsylvania. If this is a good excuse the law would be nullified, although a valid statute, and all persons, irrespective of experience and without examination, might engage in the operation of mining. This we think cannot be done.

It was the duty of the appellant by appropriate proceedings. to obtain judicial declaration that the law is void, so far as it excludes him from the privilege of showing that he is competent to work as a miner in anthracite mines, and not to nullify the statute by disregarding all its constitutional requirements. It may be that this would have involved expense and delay, but he assumed the risk that the statute would be held valid, and that the penalty would be imposed as required thereby. In so far as the act prevented him from appearing before the board for examination to establish his competency and qualification, and required him to identify himself as a mine laborer in the mines of Pennsylvania, it is void, and the courts were open to him to obtain protection against such void provisions, but having failed to avail himself of this redress, he has rendered himself liable to the penalty provided by the sixth section of the statute.

The judgment on the first and fifth counts is, therefore, affirmed and the record remitted to the court below to the end that the sentence may be carried out.

SMITH, J., concurring :

While concurring in the clear opinion of Judge HENDERSON, I would go a step further and sustain the act of assembly in toto, as an exercise of the power of police. The paramount purpose of the statute is the protection of miners of anthracite coal, and is well expressed in the title : " To protect the lives

and limbs of miners from the dangers resulting from incompetent miners working in the anthracite coal mines of this commonwealth, and to provide for the examination of persons seeking employment as miners in the anthracite region, and to prevent the employment of incompetent persons as miners in anthracite coal mines, and providing penalties for a violation of the same." All its provisions relate to this subject, touching details on points where the better security of the miners is deemed necessary. In this particular, communication through a common knowledge and language is as essential as knowledge of the explosives employed, in order to shield from common dangers. The details leading to this are considered material by those engaged in this dangerous occupation, and should receive the fullest judicial sanction, when not inhibited by constitutional restraint. Being duly enacted " all presumptions are in favor of its validity, and courts are not to be astute in finding objections to it."

This statute does not prohibit, but designates the qualifications necessary for miners, and in stating these the main purpose of the statute is not to be ignored or infringed by construction of its details, which serve to give its purpose effect. " When the calling, profession or business of parties is unattended with danger to others, little legislation will be necessary respecting it, . . . . but when the calling or profession or business is attended with danger or requires a certain degree of scientific knowledge upon which others must rely, then legislation properly steps in to impose conditions upon its exercise : " Justice FIELD, in Minneapolis, etc., Ry. Co. v. Beckwith, 129 U. S. 26 (9 Sup. Ct. Repr. 207). The appellee cites from many United States Supreme Court cases to the same effect. Anthracite coal mining is especially hazardous, calling for experience in the business. It has outgrown primitive methods, and demands education of a high order, and can best be obtained by actual experience, which is akin to apprenticeship. This experience must be adequate to meet the demands, which cannot be supplied by scientists alone. It is folly to intrust the making of a watch to the unskilled laborer, and would be criminal to intrust the admixing of dynamite to strangers, unacquainted with that compound. These comparisons may be viewed as extreme illustrations, but they serve the purpose. The innu-

merable fatalities and casualties of the past tell the lesson and value of experience in the anthracite mine.   None know it better than the intelligent, practical miner.   All others engaged in the mines must be protected by law.   This important statute should not be impaired or annulled in purpose or letter by judicial action.   The constitution of the United States is not violated by the statute in any particular.   This statute relates to the knowledge of mining rather than to the persons desiring to perform the work ; it protects, not bars, and leaves the way open to all who come with the necessary qualifications.   It is indiscriminate and applies to all persons, whether foreigners of distant countries or citizens of other states, as well as citizens of this commonwealth.   In my judgment the effort here is to defeat the express will of the legislature without regard to the safety of persons.