# Commonwealth v. Weber, Appellant.

*Criminal law—Information—Indictment—Grand jury.*

While a person arrested for crime can be held before a justice of the peace only for the offense charged in the information and warrant, the grand jury may indict him for any offense warranted by the evidence before it.

*Criminal law—Seduction—Evidence—Promise of marriage.*

A conviction for the crime of seduction will be sustained, where it appears that the defendant engaged himself to a girl of good repute under twenty-one years of age, gave her an engagement ring, and under the promise of marriage had intercourse with her, resulting in the birth of a child.

*Criminal law—Seduction—Statute of limitations—Act of March 31, 1860, Sec. 77, P. L. 450—"Usual resident"—Words and phrases.*

Where a person has been indicted in 1916 for the crime of seduction committed in 1910, and he pleads the statute of limitations, and the Commonwealth claims that he was not an "usual resident within the State," within the meaning of Section 77 of the Act of March 31, 1860, P. L. 450, the trial court commits no error in leaving to the jury whether the defendant was an "usual resident,"

where the evidence shows that the officers of justice had diligently attempted to find him, and that he succeeded in avoiding arrest by denials of his identity, frequent changes of boarding place, and receiving his mail at the general delivery.

The words "usual resident" do not refer to defendant's place of residence, but to his manner of residence. "Usual," when used in this sense, means "customary" or "common": To be an "usual resident," therefore, one must conduct himself in accordance with his customary mode of life.

Argued April 26, 1917. Appeal, No. 151, April T., 1917, by defendant, from judgment of Q. S. Allegheny Co., Sept. T., 1916, No. 739, on verdict of guilty in case of Commonwealth v. Charles Weber. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for seduction, fornication and bastardy. Before CARNAHAN, J.

From the record it appeared that the offense charged in the indictment was committed in 1910, and that the defendant was arrested and indicted in 1916. The opinion of the Superior Court states the facts. At the trial the defendant moved to quash the indictment for the following reasons:

1. There was no information made before the committing magistrate.

2. The indictment is based upon three papers (1) an alleged copy of an information made before a justice of the peace, not the committing magistrate in this case; (2) an ex parte affidavit of the original prosecutor, to certain facts not material to this indictment; and (3) a transcript of the evidence taken before the committing magistrate, which evidence in no way supports the first count in this indictment.

3. The records or papers returned in this case upon which the indictment was framed do not show that the committing magistrate was in any way the successor in

office of the magistrate before whom the information was made.

4. No other magistrate can hold the preliminary hearing or bind over a defendant except the magistrate before whom the information was made:

5. There is nothing to show that the docket of Justice Clarke, before whom the information was made, was delivered over to Justice Lorch, who held preliminary hearing and bound defendant over to court.

6. The alleged successor to Justice Clarke could not proceed to a preliminary hearing of defendant upon a copy of the docket of his predecessor.

7. There is nothing in the record or in the transcript to show that H. C. Clarke was a justice of the peace in Hampton Township or that Justice of the Peace A. T. Lorch, was his successor in office.

8. The authority to issue any warrants on the original information expired and a new information should have been made containing an allegation of the necessary statutory exceptions to the two year statue of limitations, and a warrant issued based upon this new information.

9. The information and alleged record returned upon which the indictment was found gave defendant no intimation that the charge he was held to answer, was a crime committed within two years prior to the date of his arrest. The indictment introduces a new and substantial element into the offense.

10. The acts of assembly relating to succeeding justices of the peace do not relate to or provide for the turning over to a successor in office of criminal information made before a deceased or retiring magistrate.

11. The offense as set forth in the second count of the indictment is barred by the statute of limitations.

12. Defendant went before the justice in July, 1916, and gave bail to answer a charge of a crime long since barred by the statute of limitations, alleged to have been committed in 1910, and with no allegation or intimation

of such facts as were necessary to toll the statute of limitations:

13. The indictment is found upon the mere copy of an information; no original information was returned upon which to find an indictment.

14. The offenses charged in the indictment are barred by the statute of limitations.

15. The offense set forth in the second count is barred by the statute of limitations as there is no saving clause therein alleging the exception to the bar of the statute.

16. No indictable offense is charged in the information.

### ORDER.

And now, to wit, Dec. 6th, 1916, motion refused. Exception allowed and bill sealed for defendant (1).

[There must be some corroborative testimony, and that may be positive testimony or circumstantial testimony. The only corroborative testimony that I recall is the fact—and it is for you to pass upon, as to whether it is corroborative or not—that she got a ring. She says she got a ring, and she had it on her finger on the witness stand. She says she got that about three months after she had met this man. She wore it on her finger, and there were others who saw this ring on her finger. There is testimony on the part of one person that the defendant got that ring from her; it was broken and he took it away and brought it back when it was repaired. Then, there is the further fact that this defendant himself, who has gone upon the witness stand and testified, does not deny that he did have improper relations with this girl, nor does he deny that he did induce her to have those relations under a promise of marriage. Those circumstances, if they tend to corroborate what the girl says—they are in evidence—are to be considered by you in passing upon the question as to the guilt or innocence of this defendant.] (5)

["The language of the proviso for suspension of the

statute of limitations is this: 'Shall not have been an inhabitant of this State.' Well, he was an inhabitant of the State. Accepting it literally, we cannot escape it. 'Or usual resident therein.' Those are the words that cause the trouble and cause the difference between counsel and myself. I don't know that I agree with the Commonwealth either on that subject. I don't know that it is necessary that he be a usual resident out in West Deer Township, unless something called him out there. He lived out near West Deer Township. That is where this offense was committed. I believe the girl lives out there, and he lived out there, I think, but it wasn't necessary for him to go back and live in West Deer Township. It wasn't necessary for him to go back and live in Pittsburgh; if he lived in the State, the law presumes the officers would be duly diligent, and in two years find him. But he did more than that; he lived in Pittsburgh, and he had a reason for living in Pittsburgh, and presumably did not have any particular reason to live in West Deer Township. He had an interest in that farm out there, but it is not apparent that his interest would demand his presence out there all the time at least. Now, he lived in Pittsburgh, he did business in Pittsburgh, and he did business in his own name, and he got his mail in Pittsburgh, some of it was delivered, sent through the general delivery office, and sometimes it was sent to his place of boarding, and he voted in Pittsburgh, and he paid his taxes in Pittsburgh, and he met his friends and ate meals with them in Pittsburgh. The question is this: Did he live here in Pittsburgh as Charles Weber? Did he appear open and above board, and not attempt to disguise or conceal his identity; and if he did, he cannot, under the law be convicted here. But, if he did not, then he was not a usual resident of this place, because a usual resident does not disguise himself, does not conceal his identity, does not live alone and keep out of the way of other people. That would

not be a usual resident. Such person would not be a usual resident of a city or a state."]    (6)

["Now if he (defendant), had assumed a name, if he had concealed his identity for some disguise in some way and lived that way, there would not be any question in my mind as to the running of this statute; that would be about the same thing as being out of the State."]    (7)

Verdict of guilty upon which the defendant was duly sentenced.

*Errors assigned* were (1) refusal to quash the indictment and (5-7) portions of charge as above quoting them. ....

*George H. Quail,* for appellant.—The court erred in its instructions as to the statute of limitations: Blackman v. Com., 124 Pa. 578; Com. v. Bates, 1 Pa. Superior Ct. 223; Com. v. Woodward, 1 Chester Co. 102; Com. v. Sheriff, 3 Brewst. 394.

*E. R. Jackson,* Assistant District Attorney, with him *R. H. Jackson,* District Attorney, for appellee, cited as to the statute of limitations: Com. v. Wilson, 18 Pa. Dist. Rep. 38; Com. v. Smith, 19 Pa. C. C. R. 397; Com. v. Bates, 1 Pa. Superior Ct. 223; Graham v. Com., 51 Pa. 255.

OPINION BY WILLIAMS, J., July 13, 1917:

The defendant was indicted for seduction and fornication and bastardy, and, having been found guilty, was placed upon probation for one year as to the first charge and sentenced to make certain payments as to the second.

It appears from the evidence that defendant met a girl of good repute, under twenty-one years of age, in August, 1909. She testified that he became engaged to her about three months later and bought her an engagement ring; that, in reliance upon his promise of marriage, she per-

mitted him to have intercourse about once a week until July 31, 1910, when this relation ceased. She became pregnant, and the child was born May 6, 1911.

A warrant was issued April 7, 1911, charging defendant with seduction, upon an information made by her father before Justice of the Peace Clarke. This warrant, and an alias warrant issued in 1912, were not served because defendant had left the State. February 2, 1913, a pluries warrant was issued, upon the original information, by A. T. Lorch, a successor to Clarke. Lorch arrested the defendant on July 6, 1916. He denied his identity when arrested. He had visited the neighborhood several times, during the two years immediately preceding the trial, under an assumed name, and had denied that he was Charles Weber.

At the trial defendant testified that he had not seen the girl during the month of July, 1910. He produced witnesses to prove that he had resided, worked, and voted, in Pittsburgh, twelve miles from the girl's home, and about the same distance from his own, for three years before his arrest.

Appellant's principal contention is that the court below erred in charging the jury "that because the defendant had upon a few occasions denied his identity, this was sufficient to justify them in finding that this abiding within the County of Allegheny and State of Pennsylvania, during the two years and more prior to the date of the finding of the indictment did not make him during that period 'an inhabitant of the State of Pennsylvania nor an usual resident therein' within the meaning of the Act of Assembly."

The other objections of the appellant are without merit. His arrest was, so far as the record indicates, proper. It would not have been possible to amend the information so as to incorporate the exception to the statute when the appellant was arrested under the pluries warrant. He could be held before the justice only for the offense charged in the information and war-

rant, but the grand jury had authority to indict him for any offense warranted by the evidence before it. The court, therefore, properly refused to quash the indictment. The prosecution adduced sufficient evidence to convict on the charge of seduction. Defendant gave her a ring, subsequently had it reset, was continuously seen in her company, and she was reputed to be a good girl. Evidence of facts usually accompanying the relation of affianced persons is sufficient corroboration: Rice v. Com., 100 Pa. 28.

There remains the question whether the court below erred in charging the jury that under the facts they might find defendant was not an usual resident of the State. The seventy-seventh section of the Act of March 31, 1860, P. L. 450, provides, inter alia: "All indictments ...... for ...... misdemeanors ...... shall be brought within two years......: Provided, However, That if the person against whom the indictment shall be brought or exhibited shall not have been an inhabitant of this State, or usual resident therein during the said respective term during which he shall be subject and liable to prosecution as aforesaid, then such indictment shall and may be brought and exhibited against such person, at any period within a similar space of time, during which he shall be an inhabitant of, or usual resi-. dent within the State......"

The burden of showing that defendant was not an usual resident rested upon the Commonwealth: Blackman v. Com., 124 Pa. 578, but the question before us, while considered, was not there decided. The Commonwealth satisfied the burden when it showed that defendant had absconded in 1910; that the officers had diligently attempted to find him, and that he succeeded in avoiding arrest by denials of his identity, frequent changes of boarding place, and receiving his mail at the general delivery.

Every statute must be construed with reference to the object intended to be accomplished: Turbett Twp. Over-

seers of the Poor v. Port Royal Borough Overseers of the Poor, 33 Pa. Superior Ct. 520. The object of this proviso was to prevent persons from escaping and absenting themselves until the lapse of time would relieve them from punishment: Graham v. Com., 51 Pa. 255. The statute should be given that construction which is best calculated to advance its object by remedying the mischief and securing the benefits intended. In the interpretation, words in common use should be construed in their natural, plain and ordinary meaning: City of Pittsburgh v. Kalchthaler, 114 Pa. 547; Com. v. Shaleen, 30 Pa. Superior Ct. 1, 11.

The words "usual resident" do not refer to defendant's place of residence, but to his manner of residence. "Usual," when used in this sense, means "customary" or "common": Graham v. Com., supra, at page 258. To be an "usual resident," therefore, one must conduct himself in accordance with his customary mode of life. One might commit an offense and move to another part of the State in an open manner, or even go from the State, if in military service, and not be barred from claiming the benefit of the statute: Graham v. Com., supra; but this is not so where the offender flees from justice and, subsequently, by fraud and concealment, succeeds in avoiding arrest. Unless we so construe the act the words "usual resident" become meaningless. If the offender lives outside of the State he is a nonresident, and if he remains in hiding or concealment within the State he is an "inhabitant", but not an "usual resident." The question is primarily one of fact, and was properly submitted to the jury.

While the analogy is not exact, owing to different phraseology in the statutes, the decisions in other jurisdictions are in accord with our conclusion: 12 Cyc. 256.

The judgment is affirmed and the record remitted for purposes of execution.

HENDERSON, J., DISSENTING:

The misdemeanor with which the defendant was charged was committed about six years before the indictment was found. He was therefore, entitled to the protection of the limitation provided by the seventy-seventh section of the Act of March 21, 1860, P. L. 450, unless he was not "an inhabitant of this State or usual resident therein" during the term for which he was liable to prosecution. It is not alleged that he was absent from the State; his home was and continued to be in Allegheny County. He was, therefore, an inhabitant of this State and the statute was a bar to his prosecution. The learned trial judge, however, gave a construction to the words "or usual resident therein" which permitted the jury to inquire as to his mode of living in the county and to determine whether he lived "openly and aboveboard." This we think is not the sense in which the words are used in the statute. They refer to the whereabouts of the accused. The phrases are in the alternative, "an inhabitant of this State or usual resident therein." A person might reside in the State who was not an inhabitant thereof. The word "usual" qualifies the term "resident" and relates to the place of abode—the customary place of living—and not to the manner of life. The conclusion seems unavoidable that if the accused was an inhabitant of Allegheny County at the time the offense was committed and continued to be an inhabitant thereof he could not be lawfully convicted because of the lapse of time between the commission of the offense and the finding of the indictment. And even if not an inhabitant of the State he would be protected if he were a "usual resident"; that is, if he commonly or ordinarily resided therein. I would reverse the judgment, therefore, for the reason stated.

ORLADY, P. J. and KEPHART, J. concur in dissent.