## Commonwealth v. Dunnick

*J. Edward Pawlick*, for Commonwealth.
*Richard H. Horn*, for defendant.

SHADLE, J., August 12, 1963.—On August 7, 1959, an information was filed before an alderman charging that on December 19 and 20, 1958, defendant committed fornication with the daughter of the prosecutrix, as a result of which she was then pregnant. Defendant was charged with fornication and bastardy in violation of section 506 of the Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS §4506. An addition was thereafter made to the information, setting forth that a child was born to the girl on September 19, 1959.

The transcript of the alderman shows that on the date the information was filed, a warrant for the arrest of defendant was issued to a constable. The de-

velopments thereafter are detailed in the transcript as follows:

"From information received by the Deponent and the Police officer which they believed the said Dana Dunnick was in the State of California, living there and no arrest was made. Until September 17, 1962, when it was learned defendant was at his home in New Freedom, Pa., and he was then and there arrested; and entered bail for hearing on September 25, 1962, before the alderman. At the hearing it was shown that defendant attending ·'Teachers college at California', Pennsylvania and not in the State of California. Case was held for . . . January quarter sessions, 1963 . . ."

When the transcript was received, the district attorney prepared an indictment charging defendant with fornication and bastardy on December 19 and 20, 1958, resulting in the birth of a child on September 19, 1959. This indictment, marked "Void," appears in the file, together with another indictment charging that on September 19, 1959, the date of birth, defendant failed to support a child born out of lawful wedlock.

Before any indictment was presented to the grand jury, defendant filed a motion to quash the information on the ground that it was barred by the statute of limitations. The parties took depositions of witnesses from which it appears, in addition to the facts stated in the transcript, that defendant at all times continued to maintain his residence in New Freedom, York County, but that he spent most of the summer of 1959, when the information was filed, working at a Y.M.C.A. camp in Baltimore, Maryland, most of the subsequent summers working elsewhere than in York County, and in the remaining time was living in California, Washington County, Pa., where he was enrolled in California State Teachers College from September 9, 1959, to the present time. It further ap-

pears that he spent the college holiday vacations at his New Freedom home during the three years in question. In September, 1959, defendant's sister advised prosecutrix that the former did not know defendant's whereabouts, but thought he was somewhere on the west coast.

Under section 77 of the Act of March 31, 1860, P. L. 427, as amended, 19 PS §211, prosecutions for fornication and bastardy, as for other misdemeanors, must be brought within two years of the offense. The time is computed from the date of the fornication to the date of the finding of a true bill on the indictment: Commonwealth v. Ruffner, 28 Pa. 259 (1857). However, under the terms of the statute, the period is extended during such time as defendant " 'Shall not have been an inhabitant of this State,'. . . or usual resident therein." The burden of showing that defendant had such status is on the Commonwealth. See Commonwealth v. Weber, 67 Pa. Superior Ct. 497 (1917).

There seems to be no question that defendant was in fact an "inhabitant of this State" during the nearly four years this prosecution has been pending. Although prosecutrix and the officer thought defendant was living in the State of California, and may have been misled by his sister to this effect, his residence in fact either continued to be his home in New Freedom, York County, or California, Washington County, Pennsylvania, where he was attending college.

There remains the question whether defendant ceased to be a "usual resident" within the Commonwealth so as to toll the statute of limitations. " 'The words "usual resident" do not refer to defendant's place of residence, but to his manner of residence. "Usual," when used in this sense, means "customary" or "common" . . . To be a "usual resident," therefore, one must conduct himself in accordance with his customary mode of life. One might commit

an offense and move to another part of the State in an open manner, or even go from the State, if in military service, and not be barred from claiming the benefit of the statute . . . but this is not so where the offender flees from justice and, subsequently, by fraud and concealment, succeeds in avoiding arrest. . . . If the offender lives outside of the State he is a nonresident, and if he remains in hiding or concealment within the State he is an "inhabitant," but not a "usual resident".' " : Commonwealth v. Weber, supra, affirmed in 259 Pa. 592 (1918).

The exception contained in the statute of limitations was meant for persons escaping and absenting themselves to avoid punishment: Graham v. Commonwealth, 51 Pa. 255 (1865). "The distinguishing and controlling factor appears to be the presence, in the one case, and the absence, in the other, of concealment or other effort to avoid apprehension . . .": 10 P. L. Encyc. Criminal Law, §96. In this sense, the Commonwealth clearly has failed to show that the statute of limitations has been tolled by defendant ceasing to be either an inhabitant or a usual resident of Pennsylvania. His summer employment and his college enrollment were at least as consistent with his "customary," "common," or "usual" way of life, as they were with flight, concealment or attempt to avoid arrest, as to which there is nothing more than suspicion. We are satisfied that any prosecution or indictment for fornication and bastardy has been barred by the statute of limitations during the more than four years of delay in obtaining an indictment since the act of fornication.

However, the Commonwealth suggests, and the action of the district attorney in preparing the alternative indictment implies, that the information may be sufficient to support an indictment for failure to support a child born out of lawful wedlock. Such a charge would not be barred by the statute of limitations be-

cause the Penal Code permits prosecutions to be brought within two years from the birth of the child: Act of June 24, 1939, P. L. 872, sec. 732, 18 PS §4732. This has been construed to mean a period of two years from the birth to the date the information is filed, and not to the date of indictment: Commonwealth v. O'Gorman, 146 Pa. Superior Ct. 553 (1941); Commonwealth v. Teeter, 163 Pa. Superior Ct. 211 (1948); Commonwealth v. Shimpeno, 160 Pa. Superior Ct. 104 (1946).

The question thus is presented whether an information charging fornication and bastardy under a stated section of the Penal Code may be made the basis of an indictment for failure to support an illegitimate child under a different section. In Nicholson v. Commonwealth, 96 Pa. 503 (1880), it was held that an indictment for fornication and bastardy could be based on an information charging seduction because "They are offenses of the same nature." Likewise, in Commonwealth v. Danner, 79 Pa. Superior Ct. 556 (1922), an indictment for receiving stolen goods was held properly supported by an information alleging larceny. The court there said, page 558:

"Any crime arising out of the same transaction can be laid in the indictment. . . . The offenses charged were of a cognate nature and were part of the same affair. . . . When the transactions in which he is charged to have been the actor are described in the information, he must be prepared to answer such crimes as are involved therein."

With reference to section 732 of the Penal Code, supra, the Superior Court has made the following relevant observation:

"The enactment of this statute has been deemed necessary for the protection of the public and in the aid of the mother, as well as of a child born out of lawful wedlock, where the putative father concedes the

paternity of his child and furnishes reasonable support until the statute of limitations becomes an effective bar to a prosecution for fornication and bastardy, and then claims immunity from further liability": Commonwealth v. Wibner, 73 Pa. Superior Ct. 349, page 352.

It is true that the two sections of the Penal Code proscribe different offenses, one the act of unlawful sexual intercourse resulting in the birth of a child, the other the failure of a parent to support his child. However, they both depend on the ultimate fact of paternity, and they both aim at a common objective, an order of support for the child. We do not now specifically hold that an indictment against this defendant for failure to support a child born out of lawful wedlock is valid. Such an indictment has not yet been returned, and this point, although discussed, was not formally argued before us. We do hold that the fact that a period of nearly four years has elapsed since the date the information was filed does not under the facts in this case furnish a basis for quashing the information and discharging defendant.

*Order*

And now, to wit, August 12, 1963, at 9 a.m. (EST), defendant's motion to quash the information is overruled and refused. An exception is noted for defendant.