## Graham *versus* The Commonwealth.

1. A defendant having committed an offence, entered into the military service of the United States. *Held*, that his absence in such service was temporary and did not prevent the running of the Statute of Limitations, which bars criminal proceedings when not commenced within two years.

2. All the act requires is that the offender's customary residence be in the state during the two years.

3. The proviso was meant for persons escaping and absenting themselves to avoid punishment until lapse of time might enable them to return with impunity. A soldier does not belong to this class; he remains " an inhabitant of the state or usual resident therein."

ERROR to the Court of Quarter Sessions of *Indiana county.*

This was a prosecution for adultery, which was commenced June 22d 1864. The jury found a special verdict: that the first act

[Graham *v.* Commonwealth.]

was committed about April 26th 1862; a second shortly after, and a third in June 1862, prior to the 22d day of that month; the jury also found that the defendant left his home and went into the army of the United States, on the 2d day of September 1862, his-family remaining at his former residence; that he returned home on furlough on the 17th of August 1863; he returned to the army on the 15th of October 1863, where he remained until the month of February 1865, when he again returned home on furlough, remained fifteen days, and returned· to the army, and continued there till finally discharged on the 23d of June 1865.

The only question was whether the prosecution was barred by the limitation in the 77th section of Act of March 31st 1860, Purd. 265, pl. 77.

The Court of Quarter Sessions entered judgment for the Commonwealth, and sentenced the defendant. This, on removal to the Supreme Court, was assigned for error.

*Thomas White*, *A. W. Taylor* and *Stewart & Clark*, for plaintiff in error.—The defendant was at home five months after the commission of the offence. He did not leave the state to inhabit or reside in another; he left temporarily; his "usual residence" was Indiana county with his family; he left *animo revertendi*. He was under the control of others. Graham had no residence but in Indiana county. The Act of April 2d 1822, exempting soldiers from service of civil process, provides that the service shall not be made until thirty days after his return to his "*usual place of residence*," implying the home he left is his usual place of residence. The act does not require the defendant should be *arrested* within two years, but that the indictment should "be brought and exhibited within two years;" and he may be arrested and tried on his return. In analogy to the rule in regard to the Statute of Limitations in civil cases, when once it begins to run it continues; he was at home for five months, and subject to process.: Martin Shaffer's Estate, 9 S. & R. 266.

In criminal cases the statute can be taken advantage of without pleading: Commonwealth *v.* Ruffner, 4 Casey 259.

*William Banks*, for defendant in error.—" *Usual resident*," within the meaning of this act, is one who could be arrested. If a party committing an offence, and next day going into military service, remained away two years, and could then escape punishment, the proviso that he might be tried in two years after his return would be futile.

The Act of 1822, section 70, provides exemption from service in *civil* process on soldiers going to drill, and also that no execution or *other process* shall issue against a soldier in actual service,

until thirty days after return to his usual residence ; " other process" means *criminal* as well as civil.

The opinion of the court was delivered, January 15th 1866, by THOMPSON, J.—The crime of adultery, of which the defendant below was convicted, was laid as having been committed on April 26th 1862. That is found by the special verdict, and a repetition of it in June, but before the 22d. The prosecution was commenced on the 22d of June 1864, and being instituted more than two years after the commission of the offence the plaintiff in error claims that it was barred by the limitation in the 77th section of the Act of 31st March 1860, Purd. 265, and that he was not liable to conviction and sentence. After fixing a limitation of two years, within which certain misdemeanors mentioned in the act may be prosecuted, of which adultery is one, there is a proviso in the section, that where any offender " shall not have been an inhabitant of the state, or usual resident therein during the respective times for which he shall be subject and liable to prosecution," he shall be subject within a similar period of time during which he shall be an inhabitant of, or usually a resident, within this state.

The only question we have to deal with is, whether the facts found do or do not establish that the defendant Graham was an " inhabitant and usually a resident of the state," during two years after the commission of the offence. His residence at the time was in Indiana county, where he remained for several months after committing the offence charged, until he entered the service of the United States as a soldier. He served in Maryland and Virginia, and returned home to his family several times, and remained for considerable periods, once as a paroled prisoner, and at other times on furlough, and when eventually discharged in June 1865 returned to his family and residence at his home in Indiana county.

We will not spend time in trying to ascertain what the effect would be, if any, where, as in this case, the statute had commenced running before the defendant entered the army and went with it into Virginia, for we think that all the time he was in the service his absence was temporary, and that he remained " an inhabitant of the state or usual resident therein," so that there was not the least obstacle in the way of instituting a prosecution against him, or even in claiming him to answer. His usual residence was not changed by the fact that he obeyed the call of the president, and volunteered to fight for his country at her command. To hold the contrary would be against the spirit of all our legislation. A soldier is regarded as a voter, because a citizen of the residence he left before entering the service, and he votes there wherever he may be. So, he gets a stay of execution as a citizen-soldier, if

1 P. F. SMITH—17

[Graham *v.* Commonwealth.]

judgments happen to be against him in the county from which he volunteers or enlists. It would be as ungracious as unreasonable to hold that the citizen who absents himself in obedience to the call of his country, thereby loses the ·advantage of residence by such an act. This is not so; his residence remains whether it operate for or against him. The Act of 2d of April 1822, although it has no other effect, shows what the legislative understanding of this kind of absence was. It prohibits civil process from issuing against a returning soldier until the expiration of a certain period— *"after his return to his usual place of residence."* Of course that means the residence he had before he entered the service. A soldier in the field has no residence there; the word means a " dwelling." To reside, means to· dwell permanently for any length of time ; a settled abode : Webster. He is obliged to go where he is ordered, and cannot, if ·he desired it ever so much, dwell at his usual place of residence. " Usual" residence means " customary," " common :" Webster. If the offender's customary residence is in the state during the two years, this is all the act requires. That it was in this case, the facts found show. He remained at it ·personally for near five months after the offence charged in the indictment, and returned to it always when he could during the time he was held to service as a soldier, and permanently when he was discharged.

If we were to yield to the construction contended for, namely, that a man is not an inhabitant of the state, and cannot be usually a resident of it, who is not within it all the time during the two years, we would in effect repeal the limitation as it regards many persons, who, residing near the borders of the state, or whose business requires it, are out of the state numerous times within every two years. In such cases they would be for ever liable, unless they tarried some time or other, *during two* whole years in the state. The proviso does not apply to such cases. It was no doubt meant for persons escaping and absenting themselves to avoid punishment,. until the lapse of time might enable them to return with impunity. The soldier does not belong to this class. Many times, during two years after the offence, James Graham was personally within the reach of an ordinary warrant ; and all the time the place of his residence was known, and the prosecution might at any time have been commenced as well as at the time it was, for he was at that time in actual service. But this is only to show how little room there is for complaint on the score of absence, or excuse for not instituting the prosecution sooner. It not having been commenced within two years, the defendant being .an " inhabitant and usual resident of the state" during this time, :it was barred when it was commenced, and the defendant was wrongfully .convicted and sentenced.

The sentence is therefore reversed.