THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JAMES G. GUARIGLIA, Defendant.

County Court, Kings County, October 1, 1946.

*Leon Goodman* for defendant.

*Miles McDonald, District Attorney* (*Solomon A. Klein* of counsel), for plaintiff.

SOBEL, J. . The defendant was convicted before me of the crime of seduction under promise of marriage (Penal Law, § 2175). He now moves in arrest of judgment. He contends that the indictment was barred by the applicable Statutes of Limitation (Penal Law, § 2176; Code Crim. Pro., § 143).

The offense was committed September 24, 1943. The indictment was filed March 1, 1946 — more than two years after the commission of the offense.

Section 2176 provides " * * * the lapse of two years after the commission of the offense before the finding of an indictment is a bar to a prosecution * * *."

The People contend that under section 143 of the Code of Criminal Procedure, the limitation statute ceased to operate between October 15, 1943, and December 15, 1945, during all of

which time the defendant was without the State of New York as a member of the United States Army in the European theatre of operation.

The sole question to be decided on this motion is whether the Statute of Limitations continues to operate while a defendant is outside the State by virtue of military orders.

Section 143 of the Code of Criminal Procedure provides: " If, when the crime is committed, the defendant be without the state, the prosecution may be commenced within the time limited therefor, after his return into the state. *If, after the crime is committed, the defendant departs from the state, or if he remains within the state under a false name, the time of his absence or of such residence within the state under such false name is not a part of the time limited for the commencement of the prosecution.* Only the time during which the defendant is an inhabitant of or usually *or publicly* a resident within the state or usually *or publicly* in personal attendance upon business or employment within the state shall be computed as part of the time limited for the commencement of a prosecution." (Italics mine.)

The statutory history of section 143 of the Code of Criminal Procedure should be considered since the District Attorney contends that absence, any absence from the State, stops the operation of the statute by virtue of an amendment adopted in 1929.

From the adoption of the Criminal Code in 1881 (L. 1881, ch. 442) until the enactment of chapter 246 of the Laws of 1929, the statute read as follows (as amd. by L. 1895, ch. 552): " If when the crime is committed the defendant be without the State, the indictment may be found within the term herein limited after his coming within the State; and no time during which the defendant is not an inhabitant of or usually a resident within the State or usually in personal attendance upon business or employment within the State is part of the limitation.

The 1929 amendment added, in substance, the matter underscored in present section 143.

It is clear to me from the reading of the 1929 amendment and the memoranda filed with the Governor by the several Bar Associations that the amendment made no great change in the substance of section 143. The memorandum filed by the Committee on Criminal Courts of the Association of the Bar of the City of New York stated with reference to the 1929 amendment: " At the present time, the statute excepts from its operation the time during which the defendant is out of the State, or is not in personal attendance upon business in the State. The amendment

would exclude from its operation cases where the offender conceals himself or remains within the State under a false name. This change is, likewise, in accordance with the practice in many of the States, and is also in accordance with the practice in this State in civil cases (see C. P. A. Par. 19). We also regard this change as an improvement on the present practice.''

The Committee on Legislation of the New York County Lawyers Association stated: '' Absence from the state either when the crime is committed or later now results in stopping the computation of time for the limitation. A new ground is proposed to accomplish the same result. The use of a false name *while in the state* is to stop the running of the statute of limitations.''

The District Attorney contends that the addition in 1929 of the provision '' If, after the crime is committed, the defendant departs from the state, * * * the time of his absence * * * is not a part of the time limited for the commencement of the prosecution '' so changed the statute as to require an interpretation that *any* absence from the State after the crime is committed stops the operation of the statute.

With that contention, I disagree. In the first place, although the statute as it read prior to 1929, referred only to absence *when* (at the time) the crime is committed, it was interpreted by the courts to include absence (departure) from the State after the commission of the crime. This was the interpretation given to the latter portion of old section 143. Since such was the interpretation there was no need for the Legislature to make any specific change in the statute in that connection, and clearly such was not the intention. In the second place, the memoranda of the Bar Associations indicate that the *sole* reason for the change was to '' exclude from its operation cases where the offender conceals himself or remains within the State under a false name.''

It seems to me therefore that the language to which the District Attorney attaches special significance, has no such significance but was used merely for clarification of two disjointed provisions.

For the same reason no special significance should be given to the addition of the word '' publicly '' by the 1929 amendment. It is clearly intended as antonymous to concealed residence.

It is my considered opinion therefore, that except for concealed residence or residence under a false name the statute has the same meaning now as it did prior to 1929.

Stated affirmatively, I believe section 143 means that the statute continues to operate (1) while the defendant is an "inhabitant" of the State, or (2) while he is "usually * * * a resident" of the State, such residence continuing and the statute operating even though the defendant may be out of the State from time to time on business or pleasure trips or (3) while he is usually in personal attendance upon business or employment in the State even though an inhabitant or resident of perhaps an adjoining State.

Applied to the instant case, it is clear that while the defendant was in the armed forces he continued to be both an inhabitant and a resident of the State. Indeed the People stipulated on the trial that at and prior to September 24, 1943, the date of the seduction "the defendant resided in the County of Kings, State of New York, where he was domiciled. * * * That from October 15, 1943 to on or about December 15, 1945, continuously, the defendant was without the State of New York as a member of the U. S. Army in the European theatre of operations under the orders of his superior, and that his domicile continued in the State of New York during that period."

Even in the absence of such stipulation the decisions hold that a soldier continues to be an inhabitant or resident of the State for the purpose of voting, etc. "In legal phraseology residence is synonymous with inhabitancy or domicile." (*de Meli* v. *de Meli*, 120 N. Y. 485, 491.) "A soldier in military service remains an inhabitant of the state * * *." (15 Am. Jur., Criminal Law, § 357.) "A seaman on a long voyage, and a soldier in actual service, may be respectively inhabitants of a place, though not personally present there for years." (*Sears* v. *City of Boston*, 42 Mass. 250, 251–252.)

Preliminarily, it should be observed that the interpretation of said section is governed by the salutary rule that "A statute limiting the time within which indictments must be found, is a surrender by the State of its right to try and punish criminal offenses at its discretion, without limit as to time. It is, therefore, an act of grace and favor which is to be *liberally construed*, when construction is required, *in favor of the criminal*". (Emphasis supplied.) (*People* v. *Lord*, 12 Hun 282, 287.)

This rule has received repeated approval. (*People ex rel. Reibman* v. *Warden of County Jail*, 242 App. Div. 282; *People* v. *Steiger*, 154 Misc. 538; 22 C. J. S., 361; *State* v. *Clemens*, 40 Mont. 567).

Moreover, as the court declared in *People* v. *Smolens* (258 App. Div. 373, 374) "* * * it was incumbent on the People

to prove beyond a reasonable doubt that the Statute of Limitations with respect to the various offenses had not run. (*People* v. *Brown,* 238 App. Div. 155; *People* v. *Reiser,* 240 id. 36.) "

For unlike a Statute of Limitations in a civil case, such statute in criminal proceedings creates a bar to prosecution (*People* v. *Hines,* 284 N. Y. 93, 113) and in the event, as here, the People rely on an exception to remove the bar of the statute, the burden of proof is on the State to establish its right to prosecute for the offense (20 Am. Jur., Evidence, § 156; *People* v. *Steiger,* 154 Misc. 538, *supra; People* v. *Reiger,* 240 App. Div. 36; *People* v. *Brown,* 238 App. Div. 155; 1 Wharton on Criminal Evidence [11th ed.], § 198; 13 A. L. R. 1449).

I hold that section 143 of the Criminal Code doubtlessly contemplates that a fugitive defendant who by his own voluntary act leaves the State to prevent discovery and escape prosecution, shall not be permitted to profit by his own wrongful act in delaying and frustrating prosecution. Such a fugitive certainly is no longer an inhabitant or a resident. His intentional departure destroys his domicile. The section also contemplates that a defendant who leaves the State with the intention of becoming an inhabitant or resident of another State shall not from that time on enjoy the protection of the statute. But certainly a soldier who leaves the State by force of military orders of his superiors continues to be an inhabitant, a resident and continues to enjoy the protection of section 143.

In American Jurisprudence (Vol. 15, Criminal Law, § 357) it is stated: " * * * statutes have been enacted which provide that if any person who has committed an offense is *absent* from the state, or so conceals himself that process cannot be served upon him, or conceals the fact of the crime, the time of absence or concealment is not to be included in computing the period of limitations. The concealment of the fact of a crime, however, which suspends the operation of the statute must be the result of *positive acts done by the accused* and calculated to prevent discovery. Mere silence, inaction, or nondisclosure is not concealment. *The absence of an offender in the military service of the United States does not prevent the running of the statute of limitation,* for the reason that a soldier in military service remains an inhabitant of the state, and is not within a statutory provision meant for persons escaping and absenting themselves to avoid punishment until the lapse of time might enable them to return with impunity.'' (Emphasis supplied.)

In Corpus Juris (Vol. 16, Criminal Law, § 350) it is stated with reference to the savings clause in criminal limitation

statutes: " The words ' not an inhabitant of or usually resident within the state ' require not mere absence from the state, but such absence as destroys residence, that is, a fixed, permanent, and established home   *   *   * ."

In *People* v. *McCausey* (65 Mich. 72) the accused was absent from the jurisdiction for a period of " several months ". There, as here, the limitation statute, applying to crimes, deducted from the limitation period, such time, " during which the party charged was not *usually* and *publicly* a resident within the State." (Emphasis supplied.) In holding that the prosecution was barred, during the defendant's stated absence, the court therein significantly declared (p. 73): " It is not mere absence from the State which this statute refers to, but such absence as, destroys residence. Otherwise persons would be unable to leave home for any purpose without incurring the risk of consequences which were never contemplated."

Surprisingly there are no decisions in this State which answer the main question involved in this motion, " Does the period of limitations continue to run while a defendant is out of the State in the armed forces?" But I do find a case directly in point decided shortly after the Civil War by the Supreme Court of Pennsylvania, its highest appellate court, *Graham* v. *Commonwealth* (51 Pa. 255).

That case not only decides the main question in favor of the soldier defendant but also answers some of the collateral contentions raised by the People.

The prosecution was for adultery. The court reversed a conviction, holding unanimously that the Statute of Limitations continued to operate while the defendant was in the military service.

The statute in the *Graham* case (*supra*) as shown by the opinion of the court provided (p. 257): " After fixing a limitation of two years, within which certain misdemeanors mentioned in the act may be prosecuted, of which adultery is one, there is a proviso in the section, that where any offender ' *shall not have been an inhabitant of the state, or usual resident therein during the respective times* for which he shall be subject and liable to prosecution,' he shall be subject within a similar period of time during which he shall be an inhabitant of, or usually a resident, within this state." (Italics supplied.)

*The sole question in that case, as at bar, was, as stated by the court* (p. 257): " The only question we have to deal with is, whether the facts found do or do not establish that the defendant Graham was an ' *inhabitant and usually a resident of the state* ' *during two years after the commission of the offense.* His resi-

dence at the time was in Indiana County, where he remained for several months after committing the offense charged, *until he entered the service of the United States as a soldier."* (Italics supplied.)

To this question, the court gave the following definite and unequivocal answer (pp. 257–258): " *  *  * we think that all the time he was in the service his absence was temporary, and that *he remained ' an inhabitant of the state or usual resident therein,' so that there was not the least obstacle in the way of instituting a prosecution against him,* or even in claiming him to answer. *His usual residence was not changed by the fact that he obeyed the call of the president, and volunteered to fight for his country at her command. To hold the contrary would be against the spirit of all our legislation.* A soldier is regarded as a voter, because a citizen of the residence he left before entering the service, and he votes there wherever he may be. So, he gets a stay of execution as a citizen-soldier, if judgments happen to be against him in the county from which he volunteers or enlists. *It would be as ungracious as unreasonable to hold that the citizen who absents himself in obedience to the call of his country, thereby loses the advantages of residence by such an act. This is not so; his residence remains whether it operates for or against him.* The Act of 2d of April 1822, although it has other effect, shows what the legislative understanding of this kind of absence was. It prohibits civil process from issuing against a returning soldier until the expiration of a certain period — ' *after his return to his usual place of residence.'* Of course that means the residence he had before he entered the service. A soldier in the field has no residence there; the word means ' dwelling.' To reside, means to dwell permanently for any length of time; a settled abode: Webster. *He is obliged to go where he is ordered, and cannot, if he desired it ever so much, dwell at his usual place of residence.* ' Usual ' residence means ' customary,' ' common:' Webster. *If the offender's customary residence is in the State during the two years, this is all the act requires.* That it was in this case, the facts found show." (Italics supplied.)

Further, in the *Graham* case (*supra*), as at bar, the People argued that the term absence meant *any* absence, whether with intent to flee the jurisdiction to escape prosecution, or otherwise. But the court expressly overruled such contention and specifically pointed out that (p. 258): " It [the statute] was no doubt meant for persons escaping and absenting themselves to avoid punishment, until the lapse of time might enable them to return

with impunity. *The soldier does not belong to this class."*
(Italics supplied.)

The People on this motion make several other contentions which need only passing mention. Reference is made to the Soldiers' and Sailors' Civil Relief Act of 1940 (U. S. Code, tit. 50, Appendix, § 501 *et seq.*) and the Military Law, article XIII. That article refers only to *civil* rights of a defendant and is quite obviously intended for his protection. The People contend that the absence of the defendant from the State makes prosecution impossible. The defendant's absence constitutes no barrier to the finding of a timely indictment. (*Graham* v. *Commonwealth,* 51 Pa. 255, *supra; People* v. *McCausey,* 65 Mich. 72, *supra; State* v. *Clemens,* 40 Mont. 567, *supra.*) In the last cited case, it was stated: " The mere fact that a defendant is absent from the state does not constitute any justification or excuse for delay in filing an information against him   *   *   *."

The People suggest that if questions of a defendant's identity or identification were involved, his absence might render indictment difficult if not impossible. The point is without merit. (Code Crim. Pro., §§ 284, 277; *People* v. *Bogdanoff,* 254 N. Y. 16, 30; *Commonwealth* v. *Capland,* 254 Mass. 556; *Commonwealth* v. *Gedzium,* 259 Mass. 453.)

Defendant's motion in arrest of judgment is granted, the verdict is vacated and set aside, the indictment dismissed, and the defendant discharged.