STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey P. WHITMAN, Defendant-Appellant.†

Court of Appeals

*No. 90–1455–CR. Submitted on briefs December 10,
1990.—Decided January 8, 1991.*

(Also reported in 466 N.W.2d 193.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Leonard D. Kachinsky* of *Kachinsky Law Offices* of Neenah.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Jeffrey Whitman appeals a judgment of conviction and an order denying him post-conviction relief. Whitman was charged with being a party to a crime of first-degree murder, first-degree sexual assault, kidnapping and false imprisonment contrary to secs. 939.05, 940.01, 940.225(1)(a), 940.31 and 940.30, Stats.[1] As part of a plea agreement, he pled guilty to one count of second-degree murder and one count of first-degree sexual assault. The kidnapping and false imprisonment charges were dismissed.

---

[1]For purposes of this opinion, *see* 1985–86, Stats.

Whitman contends that: (1) Because the offenses charged occurred eight and one-half years before a criminal complaint and warrant were issued, sec. 939.74, Stats., operates to bar prosecution of all nonhomicide offenses; (2) the trial court erred by refusing to reinstate the first nonprosecution agreement; and (3) the trial court should have suppressed certain statements Whitman made following his arrest because his waiver of *Miranda* rights occurred after he was subjected to a continuing pattern of coercive interrogation.

We conclude that because Whitman was "not publicly a resident" of the state within the meaning of sec. 939.74(3), Stats., during the two and one-half years he was on active duty in the United States Army stationed outside Wisconsin, the state's prosecution of the nonhomicide charges was timely. We further conclude that the trial court ruled correctly that the first nonprosecution agreement could be vacated because Whitman materially and substantially breached the agreement. Finally, we agree with the trial court that the interrogation of Whitman on the date of his arrest was sufficiently removed in time and circumstance from earlier, impermissible interrogations and that his statements were made voluntarily. The trial court's judgment and order are affirmed.

## STATUTE OF LIMITATIONS

Whitman first contends that the statute of limitations had run in his case because he was publicly a Wisconsin resident during the entire time he served on active duty in the Army stationed in Fort Polk, Louisiana. He enlisted in the Army on December 3, 1979, and was on active duty out of Wisconsin until December 3, 1982. The victim was assaulted and killed sometime

between April 4 and April 6, 1980. The state filed a criminal complaint and warrant against Whitman on October 4, 1988. Whitman argues that because he remained a Wisconsin resident for purposes of voting, *see* sec. 6.10, Stats., was registered to vote and did vote once by absentee ballot during the time he was in the service, filed Wisconsin income tax returns during the relevant period claiming full-time resident status and returned to Wisconsin after his service commitment was completed, he should be viewed as "publicly a resident" of the state within the meaning of sec. 939.74(3), Stats.,[2] while he was on active duty.

We are asked to construe the meaning of the term "not publicly a resident within this state" in sec. 939.74(3), Stats. The construction of a statute is a matter of law that we review de novo. *State v. Sher,* 149 Wis. 2d 1, 8, 437 N.W.2d 878, 880 (1989). The primary source used in interpreting a statute is the statutory language itself. *Id.* at 8–9, 437 N.W.2d at 880. Nontechnical words in a statute are to be given their ordinary and accepted meanings unless a different definition has been designated by the statutes. *Id.* at 9, 437 N.W.2d at 880. A

---

[2]Section 939.74 provides in pertinent part:

**Time limitations on prosecutions. (1)** Except as provided in sub. (2) . . . prosecution for a felony must be commenced within 6 years and prosecution for a misdemeanor or for adultery within 3 years after the commission thereof. Within the meaning of this section, a prosecution has commenced when a warrant or summons is issued, an indictment is found, or an information is filed.

. . ..

**(3)** In computing the time limited by this section, *the time during which the actor was not publicly a resident within this state* or during which a prosecution against him for the same act was pending *shall not be included.* A prosecution is pending when a warrant or a summons has been issued, an indictment has been found, or an information has been filed. (Emphasis supplied.)

statute will be construed so as to not render any part of it superfluous if such a construction can be avoided. *Id.*

Whitman contends that the term "resident" in sec. 939.74(3), Stats., should be broadly construed to include any individual who can establish legal "residence" within the meaning of the voting law, sec. 6.10, Stats., or who has unequivocally declared his intent to remain a state resident by filing state income tax returns and the like. He urges that such an interpretation would be consistent with the United States Supreme Court's statement that criminal limitations statutes are to be liberally interpreted in favor of repose. *Toussie v. United States,* 397 U.S. 112 (1970).

The plain language of sec. 939.74, Stats., compels us to reject Whitman's contention. We conclude that such an interpretation would render superfluous other components of the clause, "*publicly* a resident *within* this state." Section 939.74(3), Stats. (emphasis added). The legislature chose to modify the residency requirement with the words "publicly" and "within the state." We decline to interpret the language of this statute so as to render these terms superfluous. The statute of limitations will run as long as the residency in question is both public and within the state. Absent these two conditions, as in the case of active duty in the armed forces outside the state, the statute is tolled.

Our holding here is consistent with that of the supreme court in *Sher.* While Whitman correctly distinguishes that case on the ground Sher did not claim Wisconsin residency for any purpose, the court in *Sher* noted that "public residents are the only group of persons for whom the statute of limitations does not toll . . .. Furthermore [the defendant's urged] construction

would also render the words 'a resident within this state' without meaning." *Id.* at 9–10, 437 N.W.2d at 881.

In *Sher,* the supreme court also noted a number of courts have held that the motivation behind a defendant's absence from the state was not an issue in determining whether he was publicly a resident for purposes of the tolling statute. *See, e.g., State v. Ansell,* 675 P.2d 614 (Wash. Ct. App. 1984); *People v. Edwards,* 436 N.E.2d 727 (Ill. App. 1982). The *Ansell* court noted that it adopted the majority view that mere absence is enough to toll a statute of limitation similar to Washington's, regardless of intent to evade justice.[3] *Id.* at 617. In *Edwards,* the Illinois court ruled, as we do, that the limitations statute is tolled even where the defendant's absence from the state was occasioned by his duty in the armed services. *Id.* at 730.

---

[3]Since *Ansell,* a growing number of courts have similarly adopted this view. *See, e.g., State v. Nelson,* 755 P.2d 1175, 1177 (Ariz. App. 1988); *State v. Houck,* 727 P.2d 460, 466 (Kan. 1986); *State v. Stillings,* 778 P.2d 406, 409 (Mont. 1989); *State v. Wright,* 745 P.2d 447, 450 (Utah 1987). A small minority of courts appear to take the opposite view, that "absence" means "absenting" with an intent to conceal one's whereabouts. *See, e.g., United States v. Beard,* 118 F. Supp. 297, 301–02 (D. Md. 1954); *People v. Guariglia,* 65 N.Y.S.2d 96 (1946), *aff'd,* 69 N.Y.S.2d 759 (1947). We note that Whitman attempts to distinguish *Ansell* on the grounds that its result was dictated by a Washington statute that tolled the limitation statute when any party was not "*usually* and publicly a resident" (emphasis added) in contrast to the language of Wisconsin's statute; however, the New York trial court arrived at the opposite result in *Guariglia,* even though the New York statute similarly required that a defendant not be "*usually or publicly* a resident within the state" to toll the statute. *Guariglia.* (Emphasis added.)

267

## BREACH OF THE NONPROSECUTION AGREEMENT

Whitman next contends that the trial court erred by refusing to reinstate the first nonprosecution agreement he entered into with the district attorney.[4] The parties orally agreed to the agreement's terms on July 5, 1988, and then both signed a written version of the agreement on July 8. The agreement stipulated in part "that at all times you tell law enforcement authorities and the criminal justice system the entire truth about the death of [the victim] including events before and after."

A nonprosecution agreement may be vacated where a material and substantial breach of the agreement has been proven. *State v. Lukensmeyer,* 140 Wis. 2d 92, 103, 409 N.W.2d 395, 400 (Ct. App. 1987) (citing *State v. Rivest,* 106 Wis. 2d 406, 414, 316 N.W.2d 395, 399 (1981), for the proposition that a plea agreement may be vacated where a material and substantial breach has been proven). The party seeking to vacate the agreement must prove the breach by clear and convincing evidence. *Lukensmeyer,* 140 Wis. 2d at 104, 409 N.W.2d at 400. One material breach is sufficient to release the state from a nonprosecution agreement. *Id.* at 107, 409 N.W.2d at 401.

On July 5, Whitman met with the Outagamie County district attorney and two Outagamie County officers at the Southhampton, Massachusetts police station. Prior to agreeing to the terms of the nonprosecution agreement, the two officers questioned Whitman. Although the trial court ruled that Whitman's state-

---

[4]The first nonprosecution agreement provided that Whitman was to be "charged with one count of third degree sexual assault with a 5 year prison maximum penalty."

ments were inadmissible at trial as statements made in connection with an offer to plead guilty under sec. 904.10, Stats., it further ruled that these statements were made voluntarily and that Whitman had been advised of his *Miranda* rights. Whitman does not contend on appeal that the trial court was precluded from considering these statements as evidence of a breach of the nonprosecution agreement.

Whitman told the police on July 5 that the victim was hitchhiking at the time he, James Duquette and an unidentified third party picked her up in their car, and that she entered the car voluntarily. This statement was not true. After the district attorney rescinded the nonprosecution agreement, Whitman told the police that the three men "jumped out of the car and physically grabbed [her]. She tried to scream and break away. James Duquette placed his hand over her mouth to prevent that. [The three men] forced her into the rear seat of James Duquette's vehicle at that point. She was fighting and struggling."

██

The officers also asked Whitman on July 5 what occurred after the victim entered the car. He did not mention any violent physical beating that preceded the sexual assaults. The trial court found that the physical evidence of an extensive beating was inconsistent with Whitman's claim on July 5 that his only observation of Duquette's conduct prior to the assault was that "while he wasn't ripping the clothes or tearing them a lot he was very rough about taking the clothing off . . .." We agree with the trial court's conclusion that Whitman's misrepresentations about the facts surrounding the victim's entry into the car as well as the violence that occurred prior to the sexual assault were substantial and

material, and thus the state was entitled to rescind its first nonprosecution agreement.

## ADMISSIBILITY OF POST-ARREST STATEMENTS

The third issue on appeal is whether statements Whitman made to the police after his October 5 arrest should have been suppressed as involuntary. Whitman's earlier statements made on June 14, July 5 and August 4 were suppressed on a variety of grounds. While conceding that the police informed him of his *Miranda* rights and that the July 8 nonprosecution agreement had been revoked prior to making any statement to the police, Whitman now contends that the statements made on October 5 must be seen as part of a "continuum of interrogation." The earlier improper police questioning tainted this interview, in Whitman's view, making his statements the product of "improper police practices deliberately used to procure a confession." *State v. Clappes,* 136 Wis. 2d 222, 239, 401 N.W.2d 759, 767 (1987). We disagree.

The trial court's factual determinations with respect to the circumstances surrounding an accused's admission will not be reversed unless clearly erroneous. *Id.* at 235, 401 N.W. at 765; sec. 805.17(2), Stats. This court will independently examine the circumstances of the case to determine whether any constitutional principles have been offended. *Id.*

Whitman does not contest the trial court's factual findings with respect to his October 5 statements. Whitman was arrested in Massachusetts and taken to the Southhampton police station where Outagamie County officers questioned him. They advised him of his

270

*Miranda* rights, and he signed a form waiving his right to an attorney. The court found that Whitman was not in a weakened or intoxicated condition at the time. When it appeared that he wanted time to be alone, the officers afforded him that opportunity. The officers were not coercive in their behavior or mode of questioning. The police permitted Whitman to telephone a friend and, later, his mother, during the questioning. They allowed him to use the bathroom or smoke as he desired. They repeatedly told him that he did not have to speak to the officers, and yet he repeatedly expressed a desire to tell the authorities what he knew. No promises of leniency or other benefits were extended. Whitman understood that the prior nonprosecution agreement had been rescinded.

Our review of the record supports the trial court's finding that Whitman's confession on October 5 was voluntary. The court found that Whitman's interrogation by FBI agents on August 4 was coercive, but that the Outagamie County officers did not use coercive tactics or threaten to rescind a plea agreement if they did not get answers to their questions, as the FBI had done. Whitman's arrest on October 5 was two months after the FBI interrogation, and Whitman knew that the previous nonprosecution agreement had been revoked. After signing the form waiving his *Miranda* rights, the Outagamie County officers on two more occasions again reminded Whitman of those rights and told him that he did not have to speak to them. Despite these warnings, he chose to speak to the officers. We agree with the trial court that his statements on October 5 were made voluntarily.

*By the Court.*—Judgment and order affirmed.