Commonwealth *v.* Shimpeno, Appellant.

Argued September 30, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

Indictment charging defendant with failing to provide support for child born out of wedlock. Before THOMPSON, J.

*Saul Chersky,* for appellant.

*Maurice H. Goldstein,* Assistant District Attorney, with him *Artemas C. Leslie,* District Attorney, for appellee.

OPINION BY RHODES, J., December 11, 1946:

Defendant was charged, under section 732 of the Act of June 24, 1939, P. L. 872, 18 PS § 4732,[1] with being the father of a child born out of lawful wedlock, and wilfully neglecting or refusing to contribute reasonably to the support of the said child.

Defendant was indicted, tried, and convicted. His motions for new trial and in arrest of judgment were denied, and he was sentenced to pay $5 per week to the prosecutrix, and to pay the costs of prosecution. The court permitted his release on his own recognizance in the sum of $1,000 to comply. He has appealed, and assigns as error the action of the court below in overruling his demurrer to the evidence, in refusing his request for a directed verdict, and in denying the motions for new trial and in arrest of judgment.

Defendant's assignments of error are predicated on the single proposition that the prosecution against him was barred by the statute of limitations.

Defendant, who resided in Harmarville, Allegheny County, Pennsylvania, had been friendly with the prosecutrix, who lived in the nearby town of Springdale, for

---

[1] "Whoever, being a parent, wilfully neglects or refuses to contribute reasonably to the support and maintenance of a child born out of lawful wedlock, whether within or without this Commonwealth, is guilty of a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both."

several years prior to January, 1942, when he joined the United States army. While stationed in a training camp in one of the southern states he returned and visited the prosecutrix at her home on October 25, 1942. Defendant and prosecutrix spent the night together, and on the following morning he left to rejoin his organization. On December 31, 1942, defendant was sent overseas, and engaged in military service in Australia. During his absence, prosecutrix was delivered of defendant's child on September 1, 1943. He arrived in this country on September 4, 1945, and was discharged on September 8, 1945. He returned to his home in Allegheny County, and on September 11, 1945, prosecutrix made an information against him before a justice of the peace. Defendant was arrested, and subsequently indicted on October 9, 1945.

Defendant contends that the prosecution was barred because it was not commenced within the statutory period of two years specifically provided by section 732 of the Act of June 24, 1939, P. L. 872, 18 PS § 4732. In reply the Commonwealth asserts that the running of the statute was tolled during the period of defendant's continuous absence from the Commonwealth while serving overseas in the armed forces of the United States.

The general statute of limitations applicable to criminal prosecutions is found in the Act of March 31, 1860, P. L. 427, § 77, as amended by the Act of April 6, 1939, P. L. 17, § 1, 19 PS § 211, the relevant portion of which reads:

". . . all indictments and prosecutions for other felonies not named or excepted heretofore in this section, and for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed: Provided however, That if the person against whom such indictment shall be brought or exhibited, shall not have been an inhabitant of this State, or usual resident

therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall or may be brought or exhibited against such person at any period within a similar space of time during which he shall be an inhabitant of, or usually resident within this State. . . ."

A special limitation provision, however, is contained in section 732 of the Act of June 24, 1939, P. L. 872, 18 PS § 4732, under which defendant was indicted and convicted:

"All prosecutions under this section must be brought within two (2) years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child, or shall have acknowledged in writing his paternity, in which case a prosecution may be brought at any time within two (2) years of any such contribution or acknowledgment by the reputed father."

To the extent that it is inconsistent with the previously enacted provisions of the general statute, the special limitation provision of the later act must prevail. Act of May 28, 1937, P. L. 1019, art. 4, § 63, 46 PS § 563.

The judgment and sentence must be reversed.

We are of the opinion that defendant was "an inhabitant of this State, or usual resident therein", during the period of his military service notwithstanding his absence from the Commonwealth.

In *Graham v. The Commonwealth,* 51 Pa. 255 (1866), the defendant had been convicted of acts of adultery committed prior to June 22, 1862. On September 2, 1862, he left his home and entered the army of the United States. He served in Maryland and Virginia, and returned to his family several times, once as a paroled prisoner, and at other times on furlough. Upon his discharge, he returned to his home and family in June, 1865. The prosecution was commenced on June 22, 1864, more than two years after the commission of the offense charged. The Supreme Court, in an opinion by Mr.

Justice THOMPSON (51 Pa. 255, at pages 257, 258) said: "We will not spend time in trying to ascertain what the effect would be, if any, where, as in this case, the statute had commenced running before the defendant entered the army and went with it into Virginia, for we think that all the time he was in the service his absence was temporary, and that he remained 'an inhabitant of the state or usual resident therein,' so that there was not the least obstacle in the way of instituting a prosecution against him, or even in claiming him to answer. His usual residence was not changed by the fact that he obeyed the call of the president, and volunteered to fight for his country at her command. To hold the contrary would be against the spirit of all our legislation. . . . The proviso does not apply to such cases. It was no doubt meant for persons escaping and absenting themselves to avoid punishment, until the lapse of time might enable them to return with impunity. The soldier does not belong to this class."

In the present case, even more clearly than in the *Graham* case, it is apparent that defendant did not attempt to utilize army service as a device for escaping and absenting himself to avoid punishment. He had joined the army twenty months prior to the birth of the child he has been convicted of failing to support, and he was in service in Australia at the time the child was born. Furthermore, when defendant's military duties had been completed, he returned immediately to his home in Harmarville. It is argued on behalf of the Commonwealth that while defendant was in Australia he was not a resident of the Commonwealth. The place of the performance of his military duties did not affect defendant's residence in the Commonwealth or deprive him of any advantage of residence therein. We find nothing in the evidence which has been submitted which indicates that defendant ever abandoned his "usual residence" in Allegheny County, either to escape punishment or for any other reason. At any time during his absence a prose-

cution could have been brought against defendant upon the filing of a complaint made under oath or affirmation of the parent of the child, and the swearing out of a warrant; it was not necessary that defendant should also have been indicted in order to commence the prosecution. *Commonwealth v. O'Gorman,* 146 Pa. Superior Ct. 553, 22 A. 2d 596.

It remains for us to consider whether or not the statute of limitations was prevented from running by the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, c. 888, § 205, 54 Stat. 1181, as amended by the Act of October 6, 1942, c. 581, § 5, 56 Stat. 770, 50 U.S.C.A. App. § 525, which provides:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service, nor shall any part of such period which occurs after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 [Oct. 6, 1942] be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment."

Do the words "any action or proceeding in any court" extend to criminal prosecutions, or are they restricted in meaning to actions of a civil character? The scope of the act, as amended, is limited even as to civil liabilities. It does not apply to all civil liabilities of persons in the military service; its application is limited to certain cases. In no section of the act is there any reference to prosecutions for criminal offenses. The suggestion that Congress intended to deal with criminal prosecutions as

well as civil actions is apparently without support. Among the many decisions construing the Soldiers' and Sailors' Civil Relief Act of March 8, 1918, c. 20, 40 Stat. 440, 50 U.S.C.A. App. § 101 et seq., as well as the later Acts of 1940 and 1942, supra, we have been unable to discover any in which these acts have been held to be applicable to a proceeding of a criminal character. See 147 A.L.R. 1366 (Annotation); American Law of Veterans (The Lawyers Co-op. Pub. Co.), § 867 et seq.; Veterans' Benefits (West Pub. Co.), p. 95 et seq.

The case of *Blazejowski v. Stadnicki*, 317 Mass. 352, 58 N. E. 2d 164, was cited by the court below to sustain the theory that the acts of Congress applied to criminal prosecutions and suspended the running of statutes of limitations for the institution of such actions. This case involved a tort action to recover for personal injuries, and was brought against defendant who was a member of the United States army. The accident took place on April 27, 1941, and the action was not commenced until August 28, 1942. There was a one-year statute of limitations in Massachusetts governing such cases. The Supreme Judicial Court of Massachusetts held that the act of Congress suspended the running of the statute of limitations. We find nothing in the opinion of that court which holds that the act of Congress applies to criminal prosecutions. The Massachusetts case involved a tort. "The distinction between a tort and a crime with respect to the character of the rights affected and the nature of the wrong is this: A tort is merely a private wrong in that it is an infringement of the civil rights of individuals, considered merely as individuals, while a crime is a public wrong in that it affects public rights and is an injury to the whole community, considered as a community, in its social aggregate capacity." 22 C.J.S. § 4, p. 54.

Up to this time it seems to have been generally understood that Congress had reference exclusively to civil litigation. This understanding is based, no doubt, upon

the use of the word "civil" in the title of the acts, and also upon section 100 of the Act of 1940, supra, 50 U.S.C.A. App. § 510, which remained unaffected by the amending Act of 1942, supra. This section sets forth the purpose [2] of the act as follows: "In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is hereby made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act remains in force." Moreover, section 101 (3) of the Act of 1940, 50 U.S.C.A. App. § 511 (unaffected by amendment) provides: "The term 'person,' when used in this Act with reference to the holder of any right alleged to exist against a person in military service or against a person secondarily liable under such right, shall include individuals, partnerships, corporations, and any other forms of business association." This definition necessarily excludes criminal prosecutions from the

---

[2] "The declared purpose of an act is to be accepted as true, unless incompatible with its meaning and effect." 25 R.C.L. 253, p. 1015.

"Civil liability" has been defined as "Amenability to civil action, as distingushed from amenability to criminal prosecution." Cyclopedic Law Dictionary, 3d Ed.

The term "civil rights" embraces the rights due from one citizen to another, deprivation of which is a civil injury for which redress may be sought in a civil action. 10 Am. Jur. § 1, p. 894.

"A civil action is [an action] brought to recover some civil right, or to obtain redress for some wrong, not being a crime or misdemeanor, and is thus distinguished from a criminal action or prosecution." *Landers v. Staten Island R. Co.*, 53 N.Y. 450, 456.

operation of the act, because in such prosecutions the principal moving party is the Commonwealth, and not any private person, association, or corporation. Section 103 (3) of the amending Act of 1942, 50 U.S.C.A. App. § 513, which provides relief for sureties who have posted criminal bail bonds for principals in the military service, is not inconsistent with such exclusion, for it deals with a civil obligation incurred voluntarily by the surety and incidentally to a criminal prosecution. We think that the court below erred in holding that the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, applies to criminal prosecutions and suspended the running of the statutes which relate to the time within which prosecutions for crime may be commenced.

In the alternative, it is argued on behalf of the Commonwealth that, even if the Soldiers' and Sailors' Civil Relief Act be held to apply only to civil actions, the present prosecution is civil in nature although criminal in form. The Act of June 24, 1939, P. L. 872, § 732, 18 PS § 4732, under which defendant was convicted, empowers the court to sentence a defendant to pay a fine not exceeding $500, or undergo imprisonment not exceeding one year, or both; and, in its discretion, instead of imposing the fine or in addition thereto, to order periodic payment for support of the child, and to release the defendant on his own recognizance for compliance. The additional discretionary power reposed in the court does not deprive the proceeding of its punitive purpose or its essentially criminal character. It still remains a criminal prosecution involving every element that might be found present in any other misdemeanor.[3]

---

[3] The Act of July 11, 1917, P. L. 773, made it a misdemeanor for a parent wilfully to neglect to support a child born out of lawful wedlock. The act created a statutory offense new to our criminal law. The Act of July 21, 1919, P. L. 1075, added the limitation provision. Section 732 of the Act of June 24, 1939, P. L. 872, is a consolidation of the previous acts. Speaking of the Act of 1917, we said: "The enactment of this statute has been deemed necessary for

Opportunity to meet the civil aspects of a prosecution is frequently afforded to defendants. For example, the Act of March 31, 1860, P. L. 427, § 9, amended by the Act of April 11, 1929, P. L. 514, § 1, 19 PS § 491, provides that the court may order a nolle prosequi upon certain criminal charges (larceny where the value involved is less than one hundred dollars, assault and battery, or other misdemeanor, not charged to have been done with intent to commit a felony, and for which there shall also be a remedy by action) where the complaining party shall appear and acknowledge having received satisfaction for his injury and damage. Nevertheless, these prosecutions retain their essentially criminal character. The act with which defendant was charged is a wrong for which he was proceeded against by the state for the purpose of punishment by fine or imprisonment, or both, and it was thus a crime. 22 C.J.S. § 4, p. 55. A crime is "a wrong directly or indirectly affecting the public, to which the state has annexed certain punishments and penalties, and which it prosecutes in its own name in what is called a criminal proceeding. . . ." 22 C.J.S. § 1, p. 49. We are satisfied that the prosecution in the instant case is a criminal proceeding, and that it was barred by the statute of limitations when it was commenced.

The judgment and sentence are reversed, and defendant is discharged from any further liability under the sentence imposed upon him by the court below.

---

the protection of the public and in aid of the mother, as well as of a child born out of lawful wedlock, where the putative father concedes the paternity of his child and furnishes reasonable support until the statute of limitation becomes an effective bar to a prosecution for fornication and bastardy, and then claims immunity from further liability": *Commonwealth v. Wibner*, 73 Pa. Superior Ct. 349, at page 352.