George H. DETWEILER, Jr., LCDR, USCG (Ret.), Plaintiff–Appellant,

v.

Federico F. PENA, Secretary of Transportation, Defendant–Appellee.

No. 93–5214.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 6, 1994.

Decided Nov. 1, 1994.

Eugene R. Fidell, Washington, DC, argued the cause and filed the briefs for appellant George H. Detweiler, Jr.

Michael J. Ryan, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., R. Craig Lawrence, Michael T. Ambrosino, and John D. Bates, Asst. U.S. Attys.

Before WALD, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This appeal arises from former Lieutenant Commander Detweiler's action in the district court seeking review of a decision by the Coast Guard Board for the Correction of Military Records ("BCMR") dismissing his application as untimely. The district court upheld the BCMR's determination that the tolling provision found in § 205 of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. app. § 525 (Supp. IV 1992) ("SSCRA"), does not suspend the BCMR's three-year statute of limitations during a servicemember's period of active duty. 10 U.S.C. § 1552 (Supp. IV 1992). The district court also held that the BCMR's refusal to waive its limitations period "in the interest of justice" was subject to judicial review, but that the Board's discretion had been appropriately exercised in this case. Because we hold that § 205 of the SSCRA does in fact toll the BCMR's three-year statute of limitations and Detweiler's application was there-

fore timely filed, we need not reach the question whether the BCMR's interest-of-justice determinations are judicially reviewable. We reverse and remand the case to the district court for return to the BCMR so that ·it may decide Detweiler's petition on the merits.

## I. BACKGROUND

From 1974 until June 1994, Detweiler was an officer in the Coast Guard. The Coast Guard employs Officer Evaluation Reports ("OERs"), completed at regular intervals by an officer's superiors, to compile information relevant to promotion. Detweiler's OERs from the time he joined the service until 1982 were satisfactory, and he received all promotions for which he was eligible. From 1982 to 1985, Detweiler served as Executive Officer aboard the Coast Guard vessel *Bittersweet*. His commanding officer for the first two years continued to give him positive OERs. His superior for the final year, Commander Sirois, was less enthusiastic and filed OERs critical of Detweiler's writing and delegating abilities, as well as his physical appearance. In 1990, for the first time, Detweiler was "passed over" for promotion, allegedly because of negative comments by Sirois in his OERs.

In 1991, Detweiler applied to the Coast Guard BCMR to have the Sirois OERs and the "pass over" expunged from his record. The BCMR denied relief without reaching the merits, holding:

1. That the application was untimely because it was filed after the BCMR's three-year statute of limitations had run.

2. That § 205 of the SSCRA does not toll the BCMR limitations provision.[1]

3. That Detweiler had not shown that it would be in the "interest of justice" under § 1552(b) of the BCMR's authorizing statute to excuse the delay.[2]

---

1. Section 205 provides, in pertinent part:

   The period of military service shall not be included in computing any period now or hereafter to be limited by any law ... for the bringing of any action ... in any court, board ... or other agency of government by or against any person in military service ...

   whether such cause of action ... shall have accrued prior to or during the period of such service....
   
   50 U.S.C.App. § 525.

2. Section 1552(b) reads:

   (b) No correction may be made ... unless the claimant or his heir or legal representative

*In re Detweiler*, BCMR No. 177–91 (Feb. 14, 1992). Detweiler sought judicial review of the BCMR's decision in the district court under § 702 of the Administrative Procedure Act. 5 U.S.C. § 702 (1988). The district court agreed with the BCMR that § 205 of the SSCRA does not toll the § 1552(b) limitations period in the BCMR statute and that the BCMR therefore was not required to decide the merits of Detweiler's case. The court did, however, remand to the BCMR on the ground that the part of § 1552(b) permitting the Board to waive the three-year limitation "in the interest of justice" requires it to perform some "cursory review" of an application's merits. *Allen v. Card*, 799 F.Supp. 158, 166 (D.D.C.1992). The Secretary of Transportation (to whom the Coast Guard reports) moved to alter or amend the district court order, arguing that "interest-of-justice" determinations are unreviewable because they are committed to agency discretion by law. The district court denied the motion without opinion.

On remand, the BCMR performed a "cursory review" of the merits, and found that they did not support waiving the limitations period in the "interest of justice." *In re Detweiler*, BCMR No. 42–93 (Nov. 20, 1992). Detweiler again appealed to the district court, arguing that the Board had not complied with the court's instructions on remand because its decision was "entirely conclusory." The district court held that the BCMR had satisfactorily complied with its mandate, and that its refusal to waive the § 1552(b) limitations period was not an abuse of discretion. *Allen v. Pena*, No. 92–0398–TAF (D.D.C. Apr. 6, 1993).

Detweiler returned to the district court for another try following the Supreme Court's decision in *Conroy v. Aniskoff,* —— U.S. ——, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993), which construed § 205's tolling mandate broadly in a different factual context. In a motion filed under Federal Rules of Civil Procedure 59 and 60 (authorizing in certain circumstances alteration or amendment of, or relief from, a final judgment), Detweiler asked the court to

files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a)(1) may excuse a failure to file within three

reopen his case and reverse its ruling that § 205 did not toll the BCMR's limitations period. The court found no basis in *Conroy* to alter its earlier decision. *Allen v. Pena*, No. 92–0398–TAF (D.D.C. May 19, 1993). This appeal followed.

## II. ANALYSIS

### A. *Statutory Language*

■ The central issue in this appeal is whether the tolling provision found in § 205 of the SSCRA, 50 U.S.C.App. § 525, suspends the BCMR's three-year statute of limitations during a servicemember's period of active service. Section 205 provides in pertinent part:

> *The period of military service shall not be included in computing any period now or hereafter to be limited by any law* ... *for the bringing of any action* ... *in any court, board* ... *or other agency of government by or against any person in military service* ... *whether such cause of action* ... *shall have accrued prior to or during the period of such service*....

50 U.S.C.App. § 525 (emphasis added).

The relevant portion of the BCMR's limitations provision reads:

> (b) No correction may be made under subsection (a)(1) unless the claimant or his heir ... files a request for the correction within three years after he discovers the error or injustice.

10 U.S.C. § 1552.

The command of § 205 is unexceptionable. It tolls "any" limitations period "now or hereafter" appearing in "any" law for the bringing of "any" action before "any" court, board or bureau. The Supreme Court has labelled this dictate "unambiguous, unequivocal, and unlimited." *Conroy*, —— U.S. at ——, 113 S.Ct. at 1564 (holding that § 205 suspends for the duration of military service the running of time in which title to property can be redeemed under state law).

years after discovery if it finds it to be in the interest of justice.
10 U.S.C. § 1552(b).

The Secretary does not dispute the plain meaning of § 205's text. The district court wrote: "The government concedes that a literal reading of [§ 205] would appear to encompass the time period for filing with the BCMR." *Allen*, 799 F.Supp. at 161. The Secretary instead proffers a battery of reasons—some appealing on policy and practical grounds—why the plain language of § 205 should not be controlling. First, the Secretary suggests that to follow its literal terms would deny the BCMR statute of limitations its own "plain meaning." We do not find this argument persuasive. The tolling of a statute of limitations, under certain circumstances, does not fatally impugn its effectiveness; it merely alters the date on which the statutory period begins to run or comes to an end. Indeed, the Secretary's argument would apply to any and all instances in which § 205 is given effect, since by its very terms § 205 applies only to existing limitations periods.

## B. *Canons of Construction*

The Secretary next offers two canons of statutory construction to counteract the "plain meaning" interpretation of § 205: recent enactments should be favored over older ones; and specific statutory provisions should prevail over general ones. These canons, whatever their combative power against a statute's plain meaning, are not appropriately invoked in this case; they apply only in the face of "irreconcilably conflicting statutes." *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981) (declining to apply the recent statute canon when statutes did not "irreconcilably" conflict); *see Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133–34, 95 S.Ct. 335, 353–54, 42 L.Ed.2d 320 (1974) (rejecting the claim that a more specific statute should be read to modify a general statute on the ground that no "positive repugnancy" existed between them); *Ginsburg, Feldman & Bress v. FEA*, 591 F.2d 717, 720 n. 5 (D.C.Cir.1978) ("Where statutes deal with a subject in both general and detailed terms, *and there is conflict between the two,* the detailed expression prevails.") (emphasis supplied). Section 205 of the SSCRA and § 1552 of the BCMR law are not in "irreconcilabl[e] conflict" even if § 205 is permitted to toll § 1552's limitations period during a servicemember's period of active service. The BCMR's three-year time limit would remain in effect for all cases where the individual was not in active service during the period from discovery of the error to the filing of the petition; requests for changes in reenlistment status and upgrades of less-than-honorable discharges made by ex-servicemembers—two substantial categories of BCMR cases—remain subject to the three-year limitation. Furthermore, the three-year clock begins to tick for presently active members the moment they leave the services. Despite the Secretary's protestations, then, applying § 205 to toll the BCMR's limitations clause during a member's active service does not "eviscerate" § 1552.

The Secretary understandably cited only those canons that favor his non-plain meaning interpretation. But canons supporting the plain meaning construction of § 205 also exist, the most important of which is: "[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). As we have demonstrated, the plain meaning construction gives substantial effect to both statutes. Additionally, as Detweiler points out, the SSCRA contains an explicit exception to § 205's tolling provision for internal revenue cases. 50 U.S.C.App. § 527 (Supp. IV 1992). Where a statute contains explicit exceptions, the courts are reluctant to find other implicit exceptions. *See, e.g., Consumer Product Safety Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 109, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Ultimately, however, compelling reasons why canonical contests should not control the outcome here reside in the language and structure of § 205 itself. First, applying the "newer is better" canon would render impotent § 205's provision that "[t]he period of military service shall not be included in computing any period now *or hereafter* to be limited by any law." Statutes enacted "hereafter" are necessarily more "recent" than

§ 205—yet Congress explicitly included them within the text of the tolling clause. Second, because § 205's core purpose is to toll the limitations provisions of other, more "specific" statutes, the general over specific point would automatically apply any time § 205 is invoked.

### C. The Doctrine of "Absurd" Results

The Secretary contends that enforcing the literal language of § 205 would lead to "absurd results," and departure from the plain meaning of § 205 is therefore justified. *See, e.g., Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892) (declining to follow the literal language of a statute in "consideration of ... the absurd results [that would] follow ..."). It is not altogether clear to us what the "absurd results" would be in this case; the government's best approximation is its warning that as literally construed § 205 would permit "a career military person retiring after twenty years of service ... to challenge his or her *first* performance rating or *first* failure of selection for promotion *two decades after the fact.*" Appellee's Brief at 20 (emphasis in original).

Even this extreme example, however, does not necessarily cross the line. The only courts to address the issue have held that when § 205 tolls a statute of limitations, the doctrine of laches remains available to the government to protect itself from stale claims. In *Deering v. United States,* 620 F.2d 242, 223 Ct.Cl. 342 (1980), the Court of Claims, sitting *in banc,* explained:

> The words of [§ 205] itself refer only to statutes of limitations. The Act is silent as to laches. ... We view our statute of limitations not as an absolute entitlement to a grace period in which to sue but rather as an outside limit beyond which Congress has determined claims are simply too stale to be litigated. Implicit in the statute of limitations period is a shorter period in which laches may apply, should a particular plaintiff have unreasonably delayed and caused some prejudice to the Government. ...[3]

*Id.* 620 F.2d at 245. *Deering* is also the law of the Federal Circuit. *See Foster v. United States,* 733 F.2d 88, 89 (Fed.Cir.1984) (denominating *Deering* "a precedent binding on this court," and finding challenges to "pass overs" for promotion that had occurred seven to nine years earlier barred by laches); *accord Taylor v. North Carolina Dep't of Transp.,* 86 N.C.App. 299, 357 S.E.2d 439, 440–43 (1987) (holding that while § 205 of the SSCRA tolled the relevant statute of limitations, plaintiff's nine-year-old claim was barred by laches). Although the issue in these cases was whether laches could be asserted before a court notwithstanding § 205's tolling mandate, there is no reason why laches would not be equally available before the BCMR. *See, e.g., Allen,* 799 F.Supp. at 165 ("[L]aches can be asserted before the BCMR."); *cf. Baxter v. Claytor,* 652 F.2d 181, 185–86 & n. 4 (D.C.Cir.1981) (reversing the BCMR's dismissal of Baxter's claims for lack of jurisdiction on the ground that the Board made no finding that review "was barred by either laches or a[ ] statute of limitations"). Admittedly, requiring the Secretary to prove laches imposes an extra burden not present if we accepted his construction of § 205, but certainly the availability of laches dilutes the force of his argument that "absurd results" follow from a literal reading.

Even if the government's "worst case" scenario played out, however, the result is still not "absurd." Congress may well have expected that a servicemember's self-interest would impel her to bring critical issues quickly before the Board, while quibbles would be forgotten over time. And minor "injustices" that did linger could be preserved until after the member left active duty, when a formal petition to the Board would be less likely to threaten unit cohesion. One might disagree with such reasoning, but it could hardly be deemed "absurd." Indeed, when Congress first established BCMRs in 1946, it provided

---

**3.** This holding is consonant with the general rule that "[i]ndependently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights, and shows no excuse for his laches in asserting them." *Bliss v. Bliss,* 50 F.2d 1002, 1004–05 (D.C.Cir.1931) (quoting *Speidel v. Henrici,* 120 U.S. 377, 387, 7 S.Ct. 610, 612, 30 L.Ed. 718 (1887)).

for no limitations period on any petition, whether or not brought by active servicemembers. Legislative Reorganization Act of 1946, Pub.L. No. 79–601, § 207, 60 Stat. 837 (current version codified at 10 U.S.C. § 1552(a)).

### D. *Congressional Intent*

■ The Secretary contends nonetheless that even if tolling the BCMR's limitations period for active servicemembers does not produce "absurd" results, it is clearly contrary to congressional intent as demonstrated in legislative hearings and debate, both before and after the passage of § 205. *See, e.g., Public Citizen v. United States,* 491 U.S. 440, 455, 109 S.Ct. 2558, 2567, 105 L.Ed.2d 377 (1989) (When a "result [ ] apparently decree[d] [by the statute's language] is difficult to fathom or . . . seems inconsistent with Congress's intention" it should not be followed.); *Wolverine Power Company v. FERC,* 963 F.2d 446, 451 (D.C.Cir.1992) (court looks "beyond the literal terms of a statute to determine congressional intent . . . when its literal meaning leads to an odd or irrational result"). We require litigants who urge departure from the plain meaning of the statutory language on the basis of congressional intent to shoulder a considerable burden. In *Consolidated Rail Corp. v. United States,* 896 F.2d 574 (D.C.Cir.1990), we said:

> As the Supreme Court has explained, "[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters. [Citations omitted.] *And that "rare case" must involve, at a minimum, some clear indication of congressional intent, either in the legislative history or in the structure of the relevant statute that informs the specific language in question; any attempt*

*less grounded in the words of the legislature itself to further what a court perceives to be Congress's general goal in enacting a statute is simply too susceptible to error to be tolerated within our scheme of separation of powers."*

*Id.* at 578 (emphasis added). In this instance, we find no such requisite "clear indication" of an intent at odds with the text of § 205. Indeed, the Secretary bases much of his specific intent argument on the legislative history of § 1552, not § 205, an attenuated approach at best.[4]

The Secretary contends that because § 1552's three-year limitations period was enacted after § 205 and does not itself provide a tolling exception for active duty personnel, *see* Act of October 25, 1951, ch. 588, 65 Stat. 655, Congress must have intended the three-year time limit to apply to them. The Secretary's argument proves too much. If § 205 tolls only statutes of limitations that expressly do not apply to active servicemembers, its application to post–§ 205 enactments would be wholly redundant. More plausibly, Congress thought it unnecessary to repeat its service exemption in every subsequent statute of limitations in light of the specific provision it made in § 205 for application to laws enacted "hereafter."

The Secretary also cites testimony by a Department of Defense representative at the time the § 1552(b) limitations period was added, insisting on an "interest-of-justice" provision to protect members injured in combat, captured, or otherwise unable to file because of "exigencies [of] military service." *Authorizing Payment of Claims Arising from Correction of Military and Naval Records: Hearings on H.R. 1181 Before a Subcomm. of the Senate Comm. on Armed Services,* 82d Cong., 1st Sess. 3 (1951) (statement of Stephen S. Jackson, Office of Coun-

---

4. Actually, very little legislative history of § 1552 exists. The authorizing provision that became the current § 1552 was first enacted as § 207 of the huge Legislative Reorganization Act of 1946, ch. 753, § 207, 60 Stat. 837. When that Act originated in the Senate (S. 2177), it did not contain § 1552's predecessor provision at all; rather, the section first appeared in a substitute bill adopted by the House of Representatives, *see* 92 Cong.Rec 10156 (1946). As a result, the pro-

vision is not discussed in the only committee report accompanying the passage of the Act, S. Rep. No. 1400, 79th Cong., 2d Sess. (1946). Moreover, the section was not specifically debated on the floor and, peculiarly, does not yet appear in the section-by-section explanation for the House substitute for S. 2177, *see* Joint Comm. on the Organization of Congress, 79th Cong., 2d Sess., Explanation of House Substitute for S. 2177 (Comm.Print 1946).

sel, Office of the Secretary of Defense). The Secretary claims that had Congress intended for the SSCRA to toll the BCMR limitations period for active personnel, there would be no need for such a waiver provision. While this tidbit of legislative history does indeed advance the Secretary's interpretation of § 205, on balance, we find it an insufficiently vigorous indication of congressional intent to impeach the statutory language of § 205. The Secretary cites us to no legislative history of § 205 itself to bolster a more restrictive interpretation.

Finally, the Secretary argues that the structure of the SSCRA indicates that § 205 was not intended to toll § 1552's limitations period: the "relief" in the Soldiers' and Sailors' *Civil Relief* Act does not extend to actions before the BCMR, which are "military" (not "Civil") in nature. In its decision below, the BCMR embraced this argument:

> The purpose of the [SSCRA] and particularly Section 205 of that Act is to protect a service member from a civil action, and to protect him or her from losing the opportunity to initiate a civil action, while such service member is on military duty. The purpose of the corrections boards act (10 U.S.C. § 1552), in contrast, is to change a person's record with regard to some aspect of military service.... The fact that all the members of the correction boards must be civilians does not alter the fact that the subject matter of the proceedings is military.

> The SSCRA is not intended to protect soldiers ... from military obligations.... The fourth word of the short title of SSCRA is "Civil." Section 100 of SSCRA declares that the purpose of the Act is "to suspend enforcement of *civil liabilities* ... of persons in the military service...." When the SSCRA was amended in 1942 to add "boards," it was Congress' intent to protect servicemen from *civil* actions which might be taken without the aid of a

court. 88 CONG.REC. 5368–69 (daily ed. June 18, 1942) (statement of Rep. Brooks). The SSCRA never referred to boards, courts, or commissions of a military nature in their relation to a member of a military service.

*Detweiler,* BCMR No. 177–91 at 4 (citations omitted).

While this rationale has decided attraction, ultimately it cannot prevail. Neither the BCMR nor the Secretary offers any evidence to support the notion that Congress intended the word "civil" in the SSCRA's purpose section and title to limit the operation of § 205's plain language to proceedings involving civilian "subject matter." *Id.* We believe that, to the extent that these references may be understood to restrict § 205's literal language at all, the word "civil" would be just as naturally read in contradistinction to "criminal," as to "military." Several courts have already interpreted the SSCRA's use of the word "civil" in this manner. In *Commonwealth v. Shimpeno,* 160 Pa.Super. 104, 50 A.2d 39 (1946), the court explained:

> [In the SSCRA], Congress had reference exclusively to civil litigation.... [T]he use of the word "civil" in the title [of the SSCRA] ... and § 100 of the Act.... [indicates] that the court below erred in holding that the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, applies to criminal prosecutions....

*Id.* 50 A.2d at 43–44. *See People v. Guariglia,* 187 Misc. 843, 65 N.Y.S.2d 96, 103 (King's County Ct.1946), *aff'd* 272 A.D. 784, 69 N.Y.S.2d 759 (1947) (The SSCRA refers only to "civil rights" of the defendant, and hence does not affect the running of limitations on criminal proceedings.); *Dotseth v. Justice Court, Tucson,* 5 Ariz.App. 424, 427 P.2d 558, 562–63 & n. 3 (1967) ("[A] reading of the [SSCRA] clearly indicates, as its title suggests, that it was not intended to grant relief other than in civil actions.").[5]

---

5. Even if Congress did intend § 205 to apply only in "civilian" proceedings, we are not persuaded that the BCMR has accurately characterized the nature of its review. "The fact that all members of the correction board must be civilians" may not be so lightly dismissed, indicating as it does that Congress intended the BCMRs to

provide an independent civilian review, outside of the military establishment. Indeed, the BCMRs were created to "relieve[ ] Congress of the burden of the great number of private bills theretofore introduced at each session" requesting changes in servicemembers' records, *see Ashe v. McNamara,* 355 F.2d 277, 280 (1st Cir.1965)—

The BCMR's argument that the word "civil" in the SSCRA precludes the operation of § 205 in this case is a slight reed; the fact is, we simply do not know what (if any) effect Congress intended the word "civil" to have in this context. While the BCMR and the Secretary plausibly argue that, as a policy matter, § 205 should not apply to BCMR review, we are not at liberty to depart from clear statutory language on policy grounds unless there is evidence of "absurd" consequences or a "clear indication" of congressional intent. Here, as the Supreme Court concluded in *Conroy*, — U.S. at —, 113 S.Ct. at 1566–67, "we cannot say that Congress would have found our straight-forward interpretation of ... its words either absurd or illogical. If the consequences of that interpretation ... prove to be [ ] as unjust as respondents contend, we are confident that Congress ... will [correct the injustice]." [6]

### III. Conclusion

Section 205, on its face, tolls the BCMR's limitations period during a servicemember's period of active duty. The Secretary has not provided a "clear indication" that this result would be contrary to congressional intent, nor has he pointed to absurd results from its application in this case. Accordingly, we remand to the district court to require the BCMR to decide Detweiler's application on the merits.

*So Ordered.*

---

a process difficult to square with the Board's characterization of BCMR review as "military" in nature. If the word "Civil" in the title of the SSCRA suggests, as the Secretary argues, congressional intent to provide relief only on the civilian side of a civilian/military divide, we conclude that BCMR review fits within its orbit.

6. The government's brief appears to suggest that judicial deference to the military within its realm

of expertise, *see, e.g., Goldman v. Weinberger*, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986), supports the BCMR's interpretation. As we explain above, we do not view the BCMR as a "military" body. Even if it were, we in no way preempt the BCMR's role; we only require it to decide the merits of Detweiler's case. This can hardly "threaten the constitutional separation of powers." Appellee's Brief at 16.